Daniel McCAUSLIN, Appellee,

v.

**RELIANCE FINANCE COMPANY,**
Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 24, 2000.
Filed April 27, 2000.

John R. Fenstermacher, Harrisburg, for appellant.

Richard H. Wix, Harrisburg, for appellee.

Before CAVANAUGH, ORIE MELVIN and BROSKY, JJ.

BROSKY, J.

¶ 1 This is an appeal from a judgment[1] that included, *inter alia*, an award of attorney's fees in the amount of $12,000. Appellant, Reliance Finance Company, raises two issues for our consideration, whether the Court failed to consider the relevant factors in awarding attorney's fees in the amount of $12,000; and whether the Court improperly failed to provide Appellant a full opportunity to present its position with regard to the issue of attorney's fees? We vacate and remand.

¶ 2 The present case evolved from the repossession of an automobile by the lienholder (Appellant) from the purchaser/owner (Appellee). A review of the Complaint and Answer suggests the following relevant facts: in the summer of 1994 Appellee desired to purchase a vehicle and, as Appellee worked for a company affiliated or owned by Reliance, Appellee inquired of Reliance whether it could provide financing. Reliance indicated a willingness to provide financing to Appellee but, as Appellee initially was interested in purchasing a vehicle from a dealership with which Reliance did not have an outstanding financing arrangement, Appellee was told that Reliance would not be able to finance a car from that dealer. However, Appellee was notified of the auto companies that Reliance did have an agreement with, one of which was Grant Motor Company. Appellee subsequently purchased a vehicle on credit from Grant Motor Company on August 9, 1994, which, as anticipated, then assigned the loan agreement to Appellee. Shortly after this took place, Appellee voluntarily terminated his employment with Reliance.

¶ 3 At the heart of this controversy appears to be a conflict over the agreed upon payment schedule. The contract signed by Appellee indicates, in two separate places, that Appellee was obligated to make seventy-two "monthly" payments of $75.03. However, Reliance asserts that the payments were to be bi-monthly, thus equaling, $150.06 monthly. In fact, the term "monthly" was part of the pre-printed contract form. Underneath the pre-printed term "monthly," in the first section setting forth the payment schedule, the term "semimonthly" was handwritten in. However, in neither place was the pre-printed term "monthly," crossed out.

¶ 4 Upon Appellee's termination of employment Reliance sent him a coupon book for re-payment of the loan with a monthly payment of $150.06. Additionally, Appellee's first payment of $150.06 was deducted from his final paycheck. Under the payment schedule set forth in the coupon book, Appellee's next payment was due on October 20, 1994. At no point did Appellee contest the monthly payment amount. On November 4, 1994, Appellee made a payment of $153.06. The next payment was due on November 20, 1994. However, a payment was not received until December 19, 1994, and was in the amount of $100. No further payments were made as of early January 1995; consequently, the vehicle was repossessed on or about January 11, 1995.

¶ 5 Appellee filed a complaint against Reliance alleging that Reliance had unilaterally accelerated or altered the payment schedule, that the car had been repossessed without legal justification and that Reliance had disseminated harmful credit information about Appellee, all in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201–9.2. In addition to a prayer for unspecified actual damages, Appellee sought to recover for intentional infliction of emotional distress (IIED) and also sought to recover "punitive damages." Reliance counter-claimed asserting a breach of contract, alleging that the loan was in default and that it had exercised a legal remedy.

---

1. Although Appellant has indicated an appeal from the order of June 4, 1999, the appeal properly lies from the judgment entered upon the docket. *See Johnston the Florist v. TEDCO Construction Corp.*, 441 Pa.Super. 281, 657 A.2d 511 (1995).

¶ 6 After some discovery had been conducted, Reliance filed a motion for summary judgment as to all claims. Appellee responded by withdrawing the claim for IIED, and the motion was granted as to a claim for punitive damages. The case then went to jury trial on the remaining count for actual damages under the UTPCPL. After a trial, the jury found for Appellee and awarded him damages in the amount of $5,000. Appellee then filed post-trial motions seeking an additional award of treble damages under the UTPCPL and interest, attorney's fees and costs. In support of this motion, Appellee filed a statement detailing the accumulation of over $36,000 in attorney's fees. The court denied treble damages but awarded Appellee interest, costs and attorney's fees in the amount of $12,000. Reliance then appealed the decision to this court, contesting only the award of attorney's fees.

¶ 7 Appellant Reliance asserts that the Court erred in failing to properly apply the factors set forth in the case of *Sewak v. Lockhart*, 699 A.2d 755 (Pa.Super.1997), in awarding attorney's fees and also failed to provide it with an adequate opportunity to address the attorney's fees issue. Considering Reliance's second issue first, we note that the Court's Supplemental Memorandum discussing the award of attorney's fees indicates, in two places, that Appellant may not have been given a full and fair opportunity to address the attorney's fees issue.[2] We believe that Appellant should have been given a fair opportunity to address the matters complained of. We further applaud the trial court's candor in assessing Reliance's opportunity to address the issue and note that this fact alone might warrant a remand on the matter.

¶ 8 Nevertheless, we are further concerned with two other aspects of the

award. The Court appears to acknowledge that some of the attorney's time was likely spent on matters other than the UTPCPL counts, including an action for intentional infliction of emotional distress and a plea for punitive damages. Despite apparently acknowledging this fact, the Court does not seem to partition this time from the consideration of an award of fees, asserting that all "were beneath the umbrella of unfair trade practice litigation." This statement may be true. However, clearly the general rule is that attorney's fees are not recoverable and recovery is strictly by a grant of statutory authority to that effect. Here the statutory authority comes from 73 P.S.A. § 201–9.2, under the Pennsylvania Unfair Trade Practices and Consumer Protection Law. The Act does not specifically confer the right to recover damages for infliction of emotional distress, nor are there reported decisions recognizing such a recovery. Further, although the Act does allow the Court to impose up to treble damages for actual damage sustained, it does not otherwise confer a right to punitive damages. As such, we can see no statutory authority for awarding attorney's fees for time spent pursuing these counts. Consequently, we believe this fact should have been given consideration, yet apparently was not.

¶ 9 We are further concerned about the lack of discussion regarding customary charges and/or fee arrangements of the members of the local bar for the kind of service provided here. In *Croft v. P & W Foreign Car Service*, 383 Pa.Super. 435, 557 A.2d 18 (1989) and later, in the aforementioned *Sewak*, we indicated that in awarding attorney's fees under Pennsylvania's UTPCP Act the Court should consider:

> (1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite prop-

---

**2.** Appellee counters that Reliance was not entitled to a hearing on the matter. Since Reliance has not specifically alleged a right to a hearing we decline to address the matter but note that the award of fees amounts to a "deprivation of property," in this case in an

amount greatly exceeding the judgment for actual damages. As such, due process concerns may well be implicated that would require the granting of a hearing. *See Conrad v. State Industrial Commission*, 181 Okla. 324, 73 P.2d 858 (1937).

erly to conduct the case; (2) The customary charges of the members of the bar for similar services; (3) The amount involved in the controversy and the benefits resulting to the client or clients from the services, and (4) The contingency or certainty of the compensation.

Appellee's counsel submitted documentation purporting to show that over $36,000 in legal fees had been accrued in pursuing the present action. While this documentation is understandable, and perhaps should be anticipated, from the perspective of a winning claimant trying to add as much to the recovery as possible, it tempts credulity to suggest that Appellee's counsel would have expected Appellee to pay anything similar to this sum regardless of the outcome. Although the UTPCPL allows for the recovery of "reasonable" attorney's fees, there is no indication this measure was intended to provide a claimant, or his attorney, with a windfall or bonanza should he or she be successful. Instead, it is far more in keeping with the intent of the legislation that the claimant be made whole and not have to diminish his recovery by paying attorney's fees.

¶ 10 Additionally, while we may have indicated in *Croft* that the amount of a jury award should not act as a cap on the award of attorney's fees, nevertheless, the term "reasonable" does impart a sense of proportionality between an award of damages and an award of attorney's fees.[3] In the present case, an award of attorney's fees that is in excess of twice the jury award for actual damages certainly raises a question whether the fee award was "reasonable" or not. In our opinion, an attorney who expected to be paid well over $10,000 on a case where the recoverable

damages sustained were only $5,000, without such an understanding up front, would be unreasonable.

¶ 11 Lastly, in *Croft* we quoted language from the Senate Report regarding the intention behind allowing the recovery of attorney's fees under the Magnuson–Moss Act. This language indicates that "the requirement [allowing the recovery of attorney's fees] is designed to make the pursuit of consumer rights involving inexpensive consumer products economically feasible." *Id.*, 557 A.2d at 20. Nevertheless, while not wishing to chill consumers from pursuing legitimate legal recourse under the UTPCPL, we are hesitant to create an environment where attorneys know they can, and are, in fact, encouraged to, expend extensive time on relatively small cases in order to receive a large award of attorney's fees from "deep pocket" defendants. There is no indication that the UTPCPL was meant to be a vehicle for obtaining hefty legal fees from merchants, particularly when there is less than compelling evidence of intentional misconduct or bad faith.[4]

¶ 12 For the above reasons, we vacate the award of attorney's fees and remand for reconsideration of the matter in a manner consistent with this Opinion.

¶ 13 Judgment vacated in part. Remanded for reconsideration of the attorney fee's award and other proceedings consistent with this Opinion. Jurisdiction relinquished.

¶ 14 ORIE MELVIN, J., Concurs in the Result.

---

3. Indeed, it would seem this concept is imbedded in the third factor quoted from *Croft, supra.*

4. While Appellee prevailed at trial it appears that there was a legitimate dispute as to whether the note Appellee signed called for monthly or bi-monthly payments. Had Reliance prevailed on this issue, a reasonable scenario given the evidence, its actions in

repossessing the vehicle would have been justified. That there seemed to be an absence of bad faith on Reliance's part can be seen from the Court's refusal to award treble damages as well as in its comment that "it was not overly impressed with the decision of the jury." Supplemental Memorandum, August 25, 1999, p. 1.