Jennifer NEAL

v.

**BAVARIAN MOTORS, INC., Aded Benaleou and Ashir Benaleou, MFN Financial Corporation, Mercury Finance Company, LLC, & Consumer Portfolio Services**

**Appeal of MFN Financial Corporation, Mercury Finance Company, LLC & Consumer Portfolio Services.**

**Jennifer Neal**

v.

**Bavarian Motors, Inc., and MFN Financial Corporation, Mercury Finance Company, LLC, & Consumer Portfolio Services**

**Appeal of: Bavarian Motors, Inc.**

Superior Court of Pennsylvania.

Argued March 16, 2005.

Filed Sept. 2, 2005.

Reid R. Coppock, Exton, for MFN, Mercury & Consumer Portfolio.

Cary L. Flitter, Narberth, for Neal.

Andrew G. Gay, Philadelphia, for Bavarian Motors, Inc. and Benaleou.

Before: TODD, KELLY, JJ., and McEWEN, P.J.E.

McEWEN, P.J.E.:

¶ 1 These consolidated appeals have been brought from the judgment that was entered in favor of Jennifer Neal (plaintiff below), in her action against appellants that was founded upon the sale to her of a stolen car under the guise of a legitimate business transaction. Appellants at Appeal No. 2438 EDA 2004 are MFN Financial Corporation, Mercury Finance Company, LLC, and Consumer Portfolio Services (hereinafter referred to as "Mercury"). Appellant at Appeal No. 2439 EDA 2004 is Bavarian Motors, Inc. (hereinafter referred to as "Bavarian Motors"). We affirm in part and reverse in part.

¶ 2 The distinguished Judge Mary D. Colins, who presided over the jury trial in this case, has provided this Court with the following summary of the facts and procedural history of this matter:

In January 2001, Bavarian Motors sold a vehicle to plaintiff that it either knew or should have known was stolen. The car was financed through Mercury, a third party lender. Plaintiff made timely payments but never received permanent registration or title from the defendants [appellants]. In September 2002, plaintiff was contacted by the Pennsylvania

State Police and informed that the car that she had purchased from Bavarian Motors was a stolen vehicle. The police subsequently impounded the vehicle.

Plaintiff Jennifer Neal filed suit on October 18, 2002, against [appellants] with the following claims: breach of contract, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (73 P.S. § 201—9.2(a)); breach of warranty of title (13 Pa.C.S. § 2312(a)); fraud, misrepresentation and violation of the Pennsylvania Motor Vehicle Sales Finance Act.

The case was tried before a jury and resulted in a verdict for plaintiff on May 13, 2004. The jury awarded plaintiff total damages in the amount of $31,000. The jury found Bavarian Motors liable to plaintiff for $1[7],000.00 and Mercury liable to plaintiff for $14,000.00. Bavarian Motors was found liable on six counts: breach of contract, violations of UTPCPL, breach of warranty [under Pa.C.S. § 2312(a)], fraud, misrepresentation and violation of the PA Motor Vehicle Sales Finance Act. [Mercury was found liable on four counts: breach of contract, violations of the UTPCPL, breach of warranty under Pa.C.S. § 2312(a), and violation of the PA Motor Vehicle Sales Finance Act.] The jury made special findings that attributed $2,854.66 of Bavarian Motor's total liability of $17,000 to violations of the UTPCPL and $1,000 of Mercury's total liability of $14,000 to violations of the UTPCPL.

On May 24, 2004, the plaintiff filed a motion to mold the verdict to list all parties' names in the final verdict. In addition, plaintiff filed a motion for treble damages, attorney fees and costs pursuant to the provision of the UTPCPL. Defendants filed a motion for remittitur of damages on June 14, 2004. [The trial court] granted plain-tiff's motion to mold the verdict to list all parties' names as to the Mercury defendants, but denied plaintiff's motion as to the Bavarian Motors defendants [which excluded the personal liability of the individuals employed by Bavarian Motors]. [The trial court] ordered that the verdict be remitted to $17,869.48 to conform to the evidence. Additionally, [the trial court] added the following sums to the jury's verdict pursuant to UTPCPL: damages in the amount of $1,000, ... were trebled to $3,000.00; (2) damages in the amount of $2,854.66 ... were trebled to $8,563.98; (3) plaintiff's counsel fees, in the amount of $42,599.50 were granted; and (4) costs in the amount of $4,500.00 were granted. Thus the post-verdict award for the plaintiff totaled $70,678.30 [sic].

Slip Opinion, September 28, 2004, at pp. 1–3. Judgment was thereafter entered, and these appeals followed.

¶ 3 In the appeal at No. 2438 EDA 2004, Mercury sets out the following questions for our review:

Whether the trial court abused its discretion or committed and error of law in its calculation of damages and imposition of joint and several liability?

Whether the trial court abused its discretion by failing to fully remit damages?

Whether the trial court abused its discretion or committed an error of law in its award of attorney fees, costs and treble damages under the Unfair Trade Practices and Consumer Protection Law (UTPCPL)?

In the appeal at No. 2439 EDA 2004, the questions raised by Bavarian Motors are as follows:

Whether the trial court abused its discretion by failing to fully remit damages?

Whether the trial court abused its discretion or committed an error of law in its award of attorney fees and costs under the Unfair Trade Practices and Consumer Protection Law (UTPCPL)?

Given the identical procedural history of these two appeals, and the commonality of two of the questions raised by the respective appellants, we have elected to consolidate these appeals for purposes of disposition.[1]

¶ 4 Mercury first claims that the trial judge erred in molding the verdict to impose joint and several liability upon it and Bavarian Motors. The basis for imposing joint and several liability is recited in the Restatement (Second) of Torts as follows:

> (1) Damages for harm are to be apportioned among two or more causes where
> (a) there are distinct harms, or
> (b) there is a reasonable basis for determining the contribution of each cause to a single harm.
> (2) Damages for any other harm cannot be apportioned among two or more causes.

Restatement (Second) of Torts § 433A.

> If the tortious conduct of each of two or more persons is a legal cause of harm that cannot be apportioned, each is subject to liability for the entire harm, irrespective of whether their conduct is concurring or consecutive.

Restatement (Second) of Torts § 879. These concise statements of the law have been adopted into the jurisprudence of Pennsylvania,[2] and the law governing the assessment of liability between or among multiple tortfeasors was well summarized by our former colleague, the eminent Justice Thomas G. Saylor, when he wrote:

> "Whether liability for harm to a plaintiff is capable of apportionment is a question of law for the court, not a question of fact for the jury." *Harka v. Nabati*, 337 Pa.Super. 617, 622, 487 A.2d 432, 434 (1985), *quoting Voyles v. Corwin*, 295 Pa.Super. 126, 441 A.2d 381 (1982). In determining whether the harm to a plaintiff is capable of apportionment, that is, whether the defendants are separate or joint tortfeasors, courts consider several factors:
>
>> the identity of a cause of action against each of two or more defendants; the existence of a common, or like duty; whether the same evidence will support an action against each; the single, indivisible nature of the injury to the plaintiffs; identity of the facts as to time, place or result; whether the injury is direct and immediate, rather than consequential; responsibility of the defendants for the same *injuria* as distinguished from the same *damnum.*
>
> *Voyles v. Corwin*, 295 Pa.Super. at 130–131, 441 A.2d at 383 (1982) and *Harka v. Nabati*, 337 Pa.Super. at 622, 487 A.2d at 434 (1985), both citing Prosser, Law of Torts, § 46 n. 2 (4th Ed. 1971).
>
> "If two or more causes combine to produce a single harm which is incapable of being divided on any logical, reasonable, or practical basis, and each cause is a substantial factor in bringing about the harm, an arbitrary apportionment should not be made." *Capone v. Donovan*, 332 Pa.Super. 185, 189, 480 A.2d

---

1. The respective questions have been set forth in the order we have chosen to address them.

2. It bears remarking that this matter was filed and tried prior to the amendments to 42 Pa. C.S. § 7102, which altered the manner in which joint and several liability is assessed against multiple defendants. *See:* 42 Pa.C.S. § 7102(b.1), Act of July 15, 2004, P.L. 736, No. 87, § 5.

1249, 1251 (1984), citing Restatement (Second) of Torts § 433A, *citing* Comment i (1977) and Prosser, Law of Torts § 47 (1941). "Most personal injuries are by their very nature incapable of division." *Id.*

"If the tortious conduct of two or more persons causes a single harm which cannot be apportioned, the actors are joint tortfeasors even though they may have acted independently." *Capone v. Donovan,* 332 Pa.Super. at 189, 480 A.2d at 1251 (1984), citing Restatement (Second) of Torts § 879 (1977). Joint tortfeasors are:

> "...two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." 12 P.S. § 2082. In Black's Law Dictionary, to be a joint tortfeasor, "the parties must either act together in committing the wrong, or their acts, if independent of each other, must unite in causing a single injury." 4th Ed. (1968) page 1661. A joint tort is defined as "where two or more persons owe to another the same duty and by their common neglect such other is injured ..." *Id.* at 973.

*Lasprogata v. Qualls,* 263 Pa.Super. 174, 179 n. 4, 397 A.2d 803, 805 n. 4 (1979).

*Smith v. Pulcinella,* 440 Pa.Super. 525, 656 A.2d 494, 496–497 (1995). In this case Mercury and Bavarian Motors, as amply demonstrated by the record, acted in concert to facilitate the sale of this stolen vehicle to plaintiff. Regardless of whether Mercury's actions were less culpable than that of Bavarian Motors, the inexcusable failure of Mercury to comply with required procedures in financing a vehicle contributed to the harm suffered by the plaintiff. Thus, we detect no error in the decision of the trial court to impose joint and several liability.

¶ 5 Next, both appellants contend that the trial court erred when it refused to grant a greater remittitur of the verdict so as to account for a "use of vehicle" offset for the value of the use of the vehicle by plaintiff during the time she possessed and used the car—a period of approximately twenty months. The trial judge, in granting appellants' post trial request for remittitur, computed the damages as being composed of the $16,283.13 purchase price plus the cost of $1,586.35 in accessories that plaintiff had added to the vehicle, and thereby remitted the jury verdict of $31,000.00 to $17,869.48. Appellants contend that the trial judge erred in using the full purchase price of the vehicle and should have used a depreciated value based upon the testimony that was elicited from plaintiff's expert on cross-examination.[3]

¶ 6 The law on remittitur was aptly summarized by our venerable deceased President Judge Emeritus William F. Cercone, when he wrote:

> "A remittitur should fix the highest amount any jury could properly award, giving due weight to all the evidence offered." *Cashdollar v. Mercy Hospital of Pittsburgh,* 406 Pa.Super. 606, 595 A.2d 70, 76 (1991). Therefore, the correct question on review is whether the award of damages "falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiali-

---

**3.** On cross examination plaintiff's expert had testified that the value of the vehicle had depreciated over the time it was in the possession of the plaintiff, and that plaintiff had derived a "transportation value" from having control of the vehicle for the time period prior to it being seized by the police. *See:* N.T. May 12, 2004, pp. 21–29.

ty, prejudice, mistake, or corruption." *Haines v. Raven Arms, supra,* [536 Pa. 452, 640 A.2d 367], (citing *Carminati v. Philadelphia Transp. Co.,* 405 Pa. 500, 509, 176 A.2d 440, 445 (1962)). On appeal, the Superior Court is not free to substitute its judgment for that of the fact finder. *Botek v. Mine Safety Appliance Corp.,* 531 Pa. 160, 166, 611 A.2d 1174, 1176 (1992). Rather, it is our task to determine whether the post-trial motions judge committed a "clear" or "gross" abuse of discretion when conducting its initial evaluation of a defendant's request for remittitur. *Id.* at 165, 611 A.2d at 1176.

*Doe v. Raezer,* 444 Pa.Super. 334, 664 A.2d 102, 105 (1995), *appeal denied,* 544 Pa. 630, 675 A.2d 1248 (1996). *Accord: Bindschusz v. Phillips,* 771 A.2d 803, 813 (Pa.Super.2001), *appeal denied,* 567 Pa. 754, 790 A.2d 1012 (2001); *Gunn v. Grossman,* 748 A.2d 1235, 1240–1241 (Pa.Super.2000), *appeal denied,* 564 Pa. 711, 764 A.2d 1070 (2000); *Petrasovits v. Kleiner,* 719 A.2d 799, 806–807 (Pa.Super.1998).

■■■ ¶ 7 Consequently, if there is evidence in the record to support the award of the trial court, then this Court is not free to substitute its judgment by altering the award. Therefore, since it was within the purview of the jury to reject the testimony of the expert as to the amount of any suggested offset,[4] and since the decision of the trial judge has a solid evidentiary foundation that comports with the man-

date that "[a] remittitur should fix the highest amount any jury could properly award,"[5] we find no basis upon which to disagree with the remitted amount chosen by the trial judge.

■■■ ¶ 8 Appellants further claim that the trial court erred in its decision to award treble damages, costs, and legal fees to plaintiff under the UTPCPL.[6] In considering this contention, we are mindful that we may not disturb a trial judge's assessment of these amounts unless there has been an abuse of discretion. *Skurnowicz v. Lucci,* 798 A.2d 788, 796 (Pa.Super.2002).

■■■ ¶ 9 The general purpose of the UTPCPL is to protect the public from fraud and unfair or deceptive business practices. *Pirozzi v. Penske Olds–Cadillac–GMC, Inc.,* 413 Pa.Super. 308, 605 A.2d 373, 376, *appeal denied,* 532 Pa. 665, 616 A.2d 985 (1992). The UTPCPL, by virtue of the following language, authorizes the trial judge to grant a successful litigant an award for additional damages, reasonable attorney fees, and costs:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act,

---

4. The law is well settled that

 [a] jury is entitled to believe all, part, or none of the evidence presented. *Rafter v. Raymark Industries, Inc.,* 429 Pa.Super. 360, 632 A.2d 897 (1993). A jury can believe any part of a witness' testimony that they choose, and may disregard any portion of the testimony that they disbelieve. *Mitzelfelt v. Kamrin,* 526 Pa. 54, 584 A.2d 888 (1990). Credibility determinations are for the jury. *Sundlun v. Shoemaker,* 421 Pa.Super. 353, 617 A.2d 1330 (1992).

5. *Doe v. Raezer,* 444 Pa.Super. 334, 664 A.2d 102, 105 (1995), *appeal denied,* 544 Pa. 630, 675 A.2d 1248 (1996).

6. Appellants do not contest the finding of the jury that they were in fact culpable for violating the UTPCPL, only that the discretionary decision of the trial judge in assessing these additional amounts was excessive.

*Randt v. Abex Corp.,* 448 Pa.Super. 224, 671 A.2d 228, 233 (1996).

may bring a private action to recover actual damages or one hundred dollars ($ 100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($ 100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201—9.2(a).

▮▮▮▮ ¶ 10 We need not tarry long with the challenge to the award of treble damages since the argument offered consists of but two short paragraphs in appellant Mercury's brief, and is unsupported by any development or citation to relevant authority. Consequently, we may dismiss this challenge on grounds of waiver. *See: Connor v. Crozer Keystone Health System,* 832 A.2d 1112, 1118 (Pa.Super.2003). Even if we were to address it, however, we would find no basis upon which to award relief, since any violation of the UTPCPL empowers the trial judge to consider the additional remedies provided thereunder, and on this record, where the conduct of the appellants was egregious and their liability clear, we detect no abuse of discretion in the decision of the trial judge to award treble damages. *See: Stokes v. Gary Barbera Enterprises, Inc.,* 783 A.2d 296 (Pa.Super.2001), *appeal denied,* 568 Pa. 723, 797 A.2d 915 (2002).

▮▮▮▮ ¶ 11 Appellants, in their challenge to the award of litigation costs, argue that the trial judge erred in failing to itemize the award to appellees of the sum of $4,500.00 for costs. The trial judge, in ruling upon the parties' post-trial motions, provided the following explanation for her choice of an appropriate amount to be paid by appellants toward the reimbursement of those costs:

> The plaintiff is seeking to recover $9,326.31 in costs, which are totaled through May 21, 2004. Plaintiff has provided a list of expenses. Of that total, $7,172.50 is attributed to plaintiff's expert witness. The Court finds that the expert's fee is excessive and awards costs in the amount of $4,500.00.

Slip Opinion, July 28, 2004, 2004, p. 13. It is clear from this explanation that the trial judge awarded plaintiff partial reimbursement for the cost of hiring an expert, while denying plaintiff's request for certain other costs. Since appellants do not dispute the fact that the retention of an expert (who prepared a pretrial report and testified at trial) was necessary, we find no basis on which to conclude that the trial judge abused her discretion in awarding partial reimbursement for the cost of that expert.

▮▮▮▮ ¶ 12 Finally, appellants contend that the trial court erred in awarding plaintiff the full amount of her claim for attorney fees, namely, $42,599.50. The law relevant to determining attorney fees under the UTPCPL was well stated by our esteemed colleague Judge Joseph A. Hudock in *Sewak v. Lockhart,* 699 A.2d 755 (Pa.Super.1997):

> In a case involving a lawsuit which include[s] claims under the UTPCPL ... the following factors should be considered when assessing the reasonableness of counsel fees:
>
> (1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the case; (2) The customary charges of the members of the bar for similar services; (3) The amount involved in the controversy and the benefits resulting to the clients from the services; and (4) The

contingency or certainty of the compensation.

*Id.* at 762, *citing Croft v. P. & W. Foreign Car Service,* 383 Pa.Super. 435, 557 A.2d 18, 20 (1989).[7]

¶ 13 Subsequently, in *McCauslin v. Reliance Finance Company,* 751 A.2d 683, 685 (Pa.Super.2000), this Court held that prior to awarding counsel fees to a plaintiff on a UTPCPL claim, the defendant must have "a fair opportunity to address" the legitimacy of the claim. In remanding the case for further proceedings this Court made the following observations: (1) there should be "a sense of proportionality between an award of damages [under the UTPCPL] and an award of attorney's fees," and (2) whether plaintiff has pursued other theories of recovery in addition to a UTPCPL claim "should [be] given consideration" in arriving at an appropriate award of fees. *Id.* at 685–686. *See also: Skurnowicz v. Lucci, supra.*

¶ 14 While the multiple of UTPCPL damages to the attorney fee award is clearly beyond that which was present in *McCauslin, supra,*[8] we do not find that it is inappropriate under the facts of this case, nor do we find it precluded by the reasoning of that case. The Court in *McCauslin* did not mandate a proportion that would be the limit of acceptability, but only suggested that there be a "sense of proportionality" between the two amounts. Nor would it have been appropriate for this Court to fix a proportionate amount that would define the limit of recoverable fees, since the General Assembly specifically chose *not* to include such a factor in the statute.[9] Therefore, we do not accept appellants' argument that the award of counsel fees in this case is reversible solely on the basis that the total of the award is disproportionate to the amount of the UTPCPL recovery.

¶ 15 We do, however, find merit in the argument that a court in awarding attorney fees under the UTPCPL must

7. In *Sewak v. Lockhart,* 699 A.2d 755 (Pa.Super.1997), this Court affirmed, as being within the discretion of the trial court, the computation of a reasonable assessment for attorney's fees, and rejected the prevailing plaintiffs' claim that the award should have been greater. The trial court had concluded that "[b]ased on (1) [its] familiarity with customary charges of Bucks County attorneys for similar cases, (2) on the simplicity of the facts of the case and the legal issues presented, and (3) the $5,000 amount in controversy, ... the fair and reasonable attorney's fees in this case were $5,000.00." *Id.* at 763. Subsequently, this Court reversed a trial court grant of attorney fees to a prevailing UTPCPL plaintiff on the grounds that the trial court had not considered the four factor *Sewak* test and other considerations set out in *McCauslin v. Reliance Finance Company,* 751 A.2d 683 (Pa.Super.2000). *See: Skurnowicz v. Lucci,* 798 A.2d 788 (Pa.Super.2002).

8. As noted above, the jury in this case specifically allocated that portion of the verdict which was attributable to the co-defendants' violations of the UTPCPL, from that portion of the verdict which was attributable to their liability under other legal theories: the amount of assessed UTPCPL damages against Mercury was $1,000.00, and the amount of assessed UTPCPL damages against Bavarian Motors was $2,854.66. Since the responsibility for the payment of the counsel fees in the amount of $42,599.50 was made "joint and several," the validity of which we have already discussed, the mathematical relationship between the award of counsel fees and the award of liability under the UTPCPL must be computed by totaling the two UPTCPL awards, *i.e.,* a sum of $3,854.66, so that the UTPCPL counsel fee award was approximately 11.5 times the amount of the UTPCPL jury award (and 3.5 times the amount of the trebled award of $11,563.98).

9. By contrast, the General Assembly did specify a multiple of three as the outside limit of "punitive" damages.

link the attorney fee award to the amount of damages a plaintiff sustained under that Act, and eliminate from the award of attorney fees the efforts of counsel to recover on non-UTPCPL theories. As this Court stated in *McCauslin, supra,* 751 A.2d at 685, there is "no statutory authority for awarding attorney's fees for time spent pursuing [non-UTPCPL] counts"—a view previously expressed by this Court in *Croft v. P. & W. Foreign Car Service, supra,* 557 A.2d at 20 ("an effort should be made to apportion the time spent by counsel on the distinct causes of action"). Moreover, the wisdom of that view is apparent under the facts of this case, where plaintiff initiated this case by filing a complaint containing six separate causes of action, only one of which was pleaded under the UTPCPL, the case thereafter proceeded through all pretrial and trial stages with each of these causes of action extant, and the jury was ultimately instructed on each count and required to separately deliberate each count. The jury performed its function in a diligent manner, and thereafter returned a verdict that specifically allocated the ver-

dict between damages under the UTPCPL and damages under the other theories of relief. Thus the decision by plaintiff to proceed against defendants under multiple theories, while defensible as a strategy, substantially added to the complexity of this case, and required counsel for all parties to prepare for and be acquainted with questions of law that would arise under each theory.[10] At all times, through to the jury charging conference at which trial judge finalized the proposed instructions to the jury, plaintiff had the option of withdrawing individual counts, and proceeding on her UTPCPL count alone. Having chosen not to do so, and given the well established rule in Pennsylvania that, absent special circumstances, litigants bear their own attorney fees,[11] to permit plaintiff to recover counsel fees for all of the counts upon which she recovered damages, would not only be inequitable, but would be contrary to the law.

¶ 16 Therefore, we are obliged to vacate the award of attorney fees, and remand this case to the trial court for a re-computation of that award.[12]

---

**10.** To cite but one example, the attorneys for each side were required to prepare proposed jury instructions on each theory that was to be presented to the jury.

**11.** "[T]here can be no recovery of attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties or some other established exception." *Merlino v. Delaware County,* 556 Pa. 422, 425, 728 A.2d 949, 951 (1999). *See generally: Berg v. Georgetown Builders, Inc.,* 822 A.2d 810 (Pa.Super.2003).

**12.** In remanding this case to the trial court for the re-computation of the award of attorney fees, we are cognizant of the difficulties that will face the parties and the trial judge. It seems, however, that since the jury's award of UTPCPL damages in the aggregate amount of $3,854.66 represented 21.6% of the presently adjusted remitted verdict on all counts of $17,869.48, it would not be unreasonable

for the judge on remand to apply that percentage to the plaintiff's request for attorney fees. As the trial judge reflects upon the appropriate sum to be awarded as UTPCPL counsel fees, the trial judge would wisely review the attorney-client compensation agreement between plaintiff and her counsel. That agreement does not appear to have been presented to the trial judge in counsel's motion for attorney fees (a conclusion drawn from the fact that it does not appear in the certified record), but has been included in the reproduced record which plaintiff assembled and submitted to this Court. We also suggest a review of the fee agreement, since we are concerned with the fact that the agreement contains (1) both an hourly and a contingent method of calculating fees, and (2) a condition that "to the extent that the Court award our attorneys' fees in an amount less than our total billable hours and fee arrangement, the remainder of our fee will be payable by you out of the proceeds of your recovery."

¶ 17 Judgment affirmed in part and reversed in part. Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.[13]

¶ 18 KELLY, J., Files a Concurring Statement.

KELLY, J., Concurring.

¶ 1 I join the well-reasoned and thorough majority opinion, but I write separately because I disagree with my esteemed colleagues' recommendation that attorney fees should be directly proportional to the percentage of UTPCPL-related damages from the whole. Instead, I would emphasize that determining the amount of UTPCPL-related attorney fees is very fact-specific and should be assessed on a case-by-case basis. Furthermore, because Appellees were awarded treble damages based on Appellants' UTPCPL violations, I would suggest these treble damages should also be taken into consideration in awarding additional attorney fees.

¶ 2 As the majority aptly notes, in assessing attorney fees, a court may consider:

(1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite [ ] to conduct the case [properly]; (2) The customary charges of the members of the bar for similar services; (3) The amount involved in the controversy and the benefits resulting to the client or clients from the services[;] and (4) The contingency or certainty of the compensation.

*Croft v. P & W Foreign Car Service, Inc.*, 383 Pa.Super. 435, 557 A.2d 18, 20 (1989) (quoting 41 P.S. § 503). However, the *Croft* Court also noted apportioning UTPCPL-related damages "may prove difficult given that these claims are based on a common core of facts and related legal theories." *Id.* Recognizing this difficulty, this Court remanded because the trial court used the jury award as a cap on attorney fees instead of investigating the reasonableness of the fees in light of the aforementioned elements. *Id.*

¶ 3 Similarly, in *Sewak v. Lockhart*, 699 A.2d 755 (Pa.Super.1997), this Court affirmed the trial court's award of $5,000 in attorney fees, even though the claimed fees exceeded $22,000. The trial court followed the test in *Croft*, noting "the time and labor required was not considerable, and that no novel or difficult legal issues were presented ... [and] Buyers' counsel spent unnecessary time researching the admissibility of a summary offense." *Id.* at 763. The trial court also had "familiarity with customary charges of Bucks County attorneys for similar cases" and found $180 an hour to be excessive. *Id.* Thus, in both *Croft* and *Sewak*, this Court refused to award attorney fees based on the per-

The Pennsylvania Rules of Professional Conduct provide in relevant part:
> A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee. The factors to be considered in determining the propriety of a fee include the following:
> (1) whether the fee is fixed or contingent[.]

Pa.R.P.C. 1.5(a)(1). The absence of any provision in the Rules for "hybrid" agreements suggests that such agreements, while perhaps permissible, should be closely scrutinized. Moreover, the trial judge shall decide whether any part of the plaintiff's UTPCPL recovery, including the trebled damages, can be accessed for the payment of any counsel fees beyond the amount of counsel fees specifically awarded under the UTPCPL.

**13.** We take judicial notice of the fact that the original trial judge, the learned Judge Mary D. Collins, is no longer presiding as a judge of the Court of Common Pleas of Philadelphia. This case, therefore, shall be remanded to the President Judge of that court for reassignment.

centage of UTPCPL damages as distinguished from the total damage award.

¶ 4 In the instant case, the trial court was provided with Appellee's itemized billed hours and the Community Legal Services Attorney Fees Schedule of Hourly Rates.[14] The trial court was also provided with verifications of qualifications from Appellee's counsel. The trial court was not provided with the original fee agreement, although it was included for us in the reproduced record. The trial court's justification for awarding $42,599.50 in attorney fees was based on the fact that Appellants refused to refund the money and insisted on continuing in court. While this finding would undoubtedly increase the hours Appellee's counsel worked on the case in pursuing UTPCPL-related damages, there is no mention of any statutory exception or agreement by the parties to justify awarding the full amount of attorney fees. *See Merlino v. Delaware County*, 556 Pa. 422, 425, 728 A.2d 949, 951 (1999). Therefore, the trial court must still separate UTPCPL from non-UTPCPL billed hours.

¶ 5 The majority states that since the UTPCPL damages represent 21.6% of the adjusted remitted verdict, "it would not be unreasonable for the judge on remand to apply that percentage to the plaintiff's request for attorney fees." (Majority Opinion at 16 n. 12). Because of the similarity of strategies between UTPCPL and non-UTPCPL damages, however, it may be inherently difficult to separate attorney fees based on a strict percentage because research was undoubtedly performed by counsel in support of multiple theories. Thus, I believe awarding UTPCPL attorney fees based on a strict percentage would not accurately reflect the amount of time spent actually pursuing UTPCPL-related theories. *See Croft, supra* at 20.

¶ 6 In its reassessment of the attorney fees, I would instruct the trial court to take into consideration the information provided to it by Appellee, including the original fee agreement. The trial court should be especially mindful that research performed by counsel supported multiple legal theories. The fact that Appellee was awarded treble damages would also suggest the award of attorney fees should increase accordingly.

¶ 7 On a further note, I agree the "hybrid agreement" should be scrutinized. (*See* Majority Opinion at 1033 n. 12). I would further advise the trial court to inquire as to whether Appellee's counsel would be willing to withdraw the 10% recovery contingency in lieu of receiving the hourly rate. In determining Appellee's counsels' rate per hour "reasonable for an experienced law attorney with [six] to [ten] years of experience," the trial court makes no mention of the 10% contingency added to the billable hours. (*See* Trial Court Opinion, filed September 28, 2004, at 4). Had the trial court been aware of such a contingency, the hourly rate may not have seemed as reasonable.

¶ 8 In all other respects, I join the majority opinion.

---

**14.** I note, however, that the date of the schedule took effect on November 18, 2003, while Appellee's billable hours began in July, 2002.