J-A16017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THOMAS LODISE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ASPEN MILL, LLC, HORIZON | : | |
| CONSTRUCTION BUILDERS AND | : | |
| REMODELERS, HORIZON | : | No. 3685 EDA 2017 |
| CONSTRUCTION LLC, ASPEN MILL | : | |
| LLC, AND JAMES CASE | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: ASPEN MILL LLC, | : | |
| HORIZON CONSTRUCTION | : | |
| BUILDERS AND | : | |
| REMODELERS, AND HORIZON | : | |
| CONSTRUCTION LLC | : | |

Appeal from the Judgment Entered October 16, 2017
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2012-24791

BEFORE:  BENDER, P.J.E., LAZARUS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.:　　　　　　**FILED SEPTEMBER 04, 2018**

Aspen Mill LLC, et al. ("Aspen Mill") appeals from the judgment, entered in the Court of Common Pleas of Montgomery County, following the trial court's granting of Thomas Lodise's motion to mold the verdict and enter judgment.  After careful review, we affirm.

On March 5, 2010, Lodise entered into an agreement with Aspen Mill to purchase the residence at 229 Milton Avenue, Horsham Township, Pennsylvania ("the Residence") for $385,000.00.  Prior to finalizing the sale of the Residence, Aspen Mill assured Lodise that it would furnish a warranty

("Warranty") on the Residence. During the closing of the escrow on the Residence, an agent of Aspen Mill presented Lodise with documents that both parties had signed. As Lodise was leaving, he received a written, limited warranty; Aspen Mill signed the limited warranty but never demanded Lodise sign it, which he did not. The limited warranty provides, in relevant part, as follows:

> 7. REPAIRS – Upon receipt of your written report of a defect, if the defective item is covered by this limited warranty *we will repair or replace it at no charge to you* within sixty days (60). . . . In the event the Seller does not replace or repair the defective item within (60) days of the written notification to Seller, Buyer or Buyer's sub-contractors chosen by *Buyer shall have the option to repair or replace the defective item and Seller shall reimburse Buyer for the cost of said work*.

Written Warranty, 3/5/10, at 2 (emphasis added).

On March 13, 2010, Lodise notified Aspen Mill, via email, of leaking basement windows and three doors that did not shut properly. These defects were just the first of many. Between 2010 and 2012, Lodise sent additional emails to Aspen Mill complaining of cracks in the basement floor and wall, water intrusion in the basement, sloping floors, other doors that would not shut properly, floor deflection, and other issues. Aspen Mill repeatedly indicated that it would repair the defects enumerated in Lodise's correspondences, but rarely did. Between 2010 and 2012, Aspen Mill only repaired cracks in the Residence's drywall. Aspen Mill concedes that it never attempted to repair structural defects in the Residence (e.g., basement cracks, water intrusion, etc.).

On September 14, 2012, Lodise filed a complaint, in which he alleged two counts of breach of contract, unjust enrichment, negligence, fraud, violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL[1]"), and rescission. On July 18, 2017, Aspen Mill authored a letter to Lodise offering to repurchase the Residence at the original purchase price of $385,000.00. Aspen Mill, in the letter, stated that the offer to repurchase was not contingent upon settlement of the Lodise's lawsuit and that it did not intend to offer the letter into evidence at trial. Prior to trial, Lodise filed a motion *in limine* to preclude the purchase offer letter from evidence, which the trial court granted.

On August 8, 2017, a three-day jury trial commenced. On appeal, three claims remained outstanding: breach of express warranty, breach of implied warranty, and violation of the UTPCPL. At trial, Lodise referred to the current value of the home in his opening statement. Aspen Mill objected to the language of the opening in light of the trial court's decision not to allow Aspen Mill to introduce its purchase offer into evidence; the trial court again ruled in Lodise's favor, barring the purchase offer letter from evidence.

At the end of trial, the jury returned a verdict against Aspen Mill for $100,000.00, of which the jury found $30,000.00 attributable to a violation of the UTPCPL. On September 11, 2017, both Lodise and Aspen Mill filed post-trial motions. On October 16, 2017, the trial court denied Aspen Mill's post-

_____

[1] 73 P.S. §§ 201-1, et seq.

trial motion and granted, in part, Lodise's motion. Accordingly, the trial court entered an order molding the verdict, doubling the damages attributable to the UTPCPL claim,[2] awarding attorney and expert fees, for a total verdict of $273,258.50.

On November 8, 2017, Aspen Mill filed a timely notice of appeal. Both Aspen Mill and the trial court have complied with Pa.R.A.P. 1925. On appeal, Aspen Mill raises the following issues for our review:

1. Was it error for the [t]rial [c]ourt to deny JNOV on [Lodise's] UTPCPL claim for "failing to comply with the terms of any written guarantee or warranty . . .," 73 P.S. § 201-2(xiv), where the pertinent language of the written warranty did not require [Aspen Mill] to repair [Lodise's] property themselves, but merely to reimburse [Lodise] after he completed such work, and [Lodise] never pursu[ed] such work?

2. Did the [t]rial [c]ourt abuse its discretion and commit an error of law when it granted [Lodise's] motion *in limine* precluding admission of a letter by [Aspen Mill's] counsel offering to re-purchase [Lodise's] home for the full original purchase price with no condition that [Lodise] discontinue any part of [his] legal action?

3. Did the [t]rial [c]ourt abuse its discretion in awarding to [Lodise] approximately 93% of the attorney's fees and expert witness costs he incurred pursuing this action, where such expenditures arose out of seven distinct (albeit, factually

---

[2] In determining whether to double or treble damages under the UTPCPL, "[c]entrally, courts of original jurisdiction should focus on the presence of intentional or reckless, wrongful conduct, as to which an award of [double or treble] damages would be consistent with, and in furtherance of, the remedial purposes of the UTPCPL." *Schwartz v. Rockey*, 932 A.2d 885, 898 (Pa. Super. 2007). The decision to double or treble damages is within the discretion of the trial court. *Id.* Here, the trial court determined that Aspen Mill's wanton disregard of its obligation to repair the Residence merited doubling the UTPCPL portion of Lodise's damages award.

related) causes of action, only one of which, the UTPCPL [claim], allowed for an award of attorney's fees?

Brief of Appellant, at 5-6.

Aspen Mill first argues that the Warranty did not require it to repair the Residence, but merely to reimburse Lodise after he completed such repairs. This claim is meritless.

> In interpreting the language of a contract, we attempt to ascertain the intent of the parties and give it effect. When the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement, which will be given its commonly accepted and plain meaning. Additionally, in determining the intent of the contracting parties, all provisions in the agreement will be construed together and given effect. Thus, we will not interpret a provision of a contract in a manner which results in another portion being annulled.

*LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A2d 639, 647-48 (Pa. Super. 2009) (citations omitted).

Here, the language in the Warranty explicitly states, "Upon receipt of your written report of a defect . . . we will repair or replace it at no charge to you." Warranty, 3/5/10, at 10. Alternatively, the "[b]uyer shall have the **option** to repair or replace the defective item and Seller shall reimburse Buyer for the cost of said work." *Id.* (emphasis added). We find this language clear and unambiguous. The Warranty clearly provided that Aspen Mill was required to undertake repairs; it did not. Lodise merely had the *option* to seek reimbursement for repairs undertaken to remedy defects in the Residence; said option was not, as Aspen Mill avers, a requirement. Therefore, Aspen Mill breached the Warranty.

Second, Aspen Mill claims that the trial court erred in granting Lodise's motion *in limine* precluding admission of Aspen Mill's July 17, 2017 purchase offer letter.

A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. ***Parr v. Ford Motor Co.***, 109 A.3d 682, 690 (Pa. Super. 2014). "It gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury." ***Id.*** "A trial court's decision to grant or deny a motion *in limine* 'is subject to an evidentiary abuse of discretion standard of review.'" ***Id.*** (quoting ***Commonwealth v. Reese***, 31 A.3d 708, 715 (Pa. Super. 2011) (en banc)).

> Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires manifest unreasonableness, or partiality, prejudice, bias or ill-will, or such lack of support so as to be clearly erroneous.

***Keystone Dedicated Logistics, LLC v. JGB Enterprises, Inc.***, 77 A.3d 1, 11 (Pa. Super. 2013) (quotations and citations omitted).

Here, the trial court precluded the July 17, 2017 purchase offer letter from evidence pursuant to Pa.R.E. 402 and 403,[3] which provide, in relevant parts, as follows:

_____

[3] Aspen Mill avers that the trial court prohibited the admission of the purchase offer letter pursuant to Pa.R.E. 408. Pa.R.E. 408 ("Evidence of the following

Rule 402. General Admissibility of Relevant Evidence

All relevant evidence is admissible, except as otherwise provided by law.  Evidence that is not relevant is not admissible.

. . .

Rule 403. Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time or Other Reasons

The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Pa.R.E. 402 and 403.  Aspen Mill's offer to purchase the property from Lodise for $385,000.00 (i.e., the original purchase price) does not establish the value of the property to a disinterested third party.  Furthermore, Aspen Mills informed Lodise in its purchase offer letter that said offer was not contingent upon settlement, and that it would not attempt to admit the purchase offer letter as evidence at trial.  Therefore, by Aspen Mill's own tacit admission, the purchase offer letter is irrelevant for establishing the value of the Residence.  Moreover, evidence of Aspen Mill's purchase offer would have confused the issues in this case.  Aspen Mill's purchase offer is not dispositive of whether it breached the Warranty or violated the UTPCPL.  Lodise's initial hesitancy and ultimate rejection of Aspen Mill's purchase offer convolutes other relevant

_____

is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim[:]  (1) furnishing, promising, or offering . . . a valuable consideration in compromising or attempting to compromise the claim[.]").  They are mistaken.  The trial court did not consider rule 408 in determining that it must exclude the July 17, 2017 purchase offer letter from evidence.

issues. Therefore, the trial court did not abuse its discretion in barring the July 17, 2017 purchase offer from evidence.

Lastly, Aspen Mill argues that the trial court abused its discretion in awarding Lodise approximately 92 percent of attorney fees and expert witness costs he incurred pursuing his action. We disagree.

Under the UTPCPL, "[t]he court may award to the plaintiff, in addition to other relief provided . . . costs and reasonable attorney fees." 73 P.S. § 201-9.2. The trial court has discretion in awarding attorney's fees, and an appellate court will not disturb such an award unless the trial court abuses that discretion. *Skurnowicz v. Lucci*, 798 A.2d 788, 796 (Pa. Super. 2002). In exercising its discretion, the trial court must consider:

> (1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the case; (2) [t]he customary charges of the members of the bar for similar services; (3) [t]he amount involved in the controversy and the benefits resulting to the client or clients from the services, and (4) [t]he contingency or certainty of the compensation.

*Id.*, citing *McCauslin v. Reliance Fin. Co.*, 751 A.2d 683, 685-86 (Pa. Super. 2000).

While the trial court may award attorney fees for violations of the UTPCPL under section 201-9.2, they are not available for common law breach of contract or implied warranty violations. Rather, the trial court, in awarding attorney fees under the UTPCPL, must link the fee award to the amount of damages the plaintiff sustained under the UTPCPL, and eliminate from the award of attorney fees the efforts of counsel to recover on non-UTPCPL

theories. ***Neal v. Bavarian Motors, Inc.***, 882 A.2d 1022, 1031 (Pa. Super. 2005). Accordingly, the court should make an effort to "apportion the time spent by counsel on the distinct causes of action." ***Croft v. P & W Foreign Car Services***, 557 A.2d 18, 20 (Pa. Super. 1989).

Here, the trial court awarded Lodise $119,370.75 of his total attorney fees expenditure of $129,277.00 (i.e., approximately 92 percent of attorney fees) and $23,887.75 in expert witness fees. Lodise pursued various non-UTPCPL causes of action; however, the underlying facts of each of those causes of action mirror those of his UTPCPL claim. Aspen Mill concedes that Lodise's UTPCPL claims relate factually to his other causes of action. Brief of Appellant, at 6. Accordingly, the trial court only subtracted attorney fees that that counsel exclusively billed on non-UTPCL theories. The trial court summarized its reasons for deducting only $9,906.25 in attorney fees as follows:

> [A] fair estimate is that four hours of [counsel's] times was spent on drafting pleadings, eight hours of [counsel's] time was spent on pleadings . . . twelve hours of [counsel's] time was spent on researching and drafting proposed points for charge . . . and a half-day of trial and related preparation for [counsel] (roughly 7.25 hours each)[4] . . . were spent on pursuing purely non-UTPCPL claims.

Memorandum Order, 10/16/17, at 8.

Aspen Mill argues that, pursuant to ***Bavarian Motors, Inc.***, Lodise was entitled only to an attorney fees award commensurate with the percentage of

---

[4] Two attorneys represented Lodise at trial.

UTPCPL damages as compared to the entire verdict. Aspen Mill premises this calculation on *dicta* in **Bavarian Motors Inc.**, which states, "*It would not be unreasonable* for the [trial court] judge . . . to apply [the percentage of UTPCPL damages of the verdict] to the plaintiff's request for attorney fees."[5] **Bavarian Motors, Inc.**, 882 A.2d at 1032 n.12 (emphasis added).

However, this Court, in **Bavarian Motors Inc.**, did not mandate, as Aspen Mill argues, that such a method is the only way to calculate an award of attorney fees under the UTPCPL. This Court merely stated that such a method "would not be unreasonable."[6] The trial court awarded Lodise attorney fees where counsel's efforts were in furtherance of his UTPCPL claim, and subtracted attorney fees where such efforts were in exclusive furtherance of non-UTPCPL theories. Therefore, we do not find the trial court abused its

---

[5] Aspen Mill asserts that, of the total verdict, 30 percent is attributable to UTPCPL damages. Brief of Appellant, at 68.

[6] In his concurring opinion, the Honorable John Kelly opined that:

> Because of the similarity of strategies between UTPCPL and non-UTPCPL damages, however, it may be inherently difficult to separate attorney fees based on a strict percentage because research was undoubtedly performed by counsel in support of multiple theories. Thus, I believe awarding UTPCPL attorney fees based on a strict percentage would not accurately reflect the amount of time spent actually pursuing UTPCPL-related theories.

**Bavarian Motors, Inc.**, 882 A.2d at 1034. Judge Kelly's concurrence belies Aspen Mill's assertion that this Court established a bright-line rule regarding the calculation of attorney fees in UTPCPL cases.

discretion in determining appropriate attorney fees under the UTPCPL. ***Skurnowicz***, ***supra***.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/4/18