J-A03036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOHN P. BRANDT, O.D. AND KAREN BRANDT | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MASTER FORCE CONSTRUCTION CORP. (D/B/A/ WE DO METAL ROOFS.COM), FOX HOME IMPROVEMENT NETWORK, CORP., ROBERT DEHARDER AND KEITH WILTON | : | No. 1081 MDA 2019 |
| | : | |
| APPEAL OF: KEITH WILTON | : | |

Appeal from the Judgment Entered June 24, 2019
In the Court of Common Pleas of Clinton County Civil Division at No(s):
2014-659

BEFORE:  LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 21, 2020**

Appellant, Keith Wilton ("Wilton"), appeals from the June 24, 2019 Judgment entered in favor of Appellees, John P. Brandt, O.D., and Karen Brandt, following a non-jury trial.  Wilton challenges, *inter alia*, the trial court's finding that it violated the Home Improvement Consumer Protection Act ("HICPA"), 73 P.S. §§ 517.1 *et seq*., and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 *et seq*.  After careful review, we affirm.

**Background**

The relevant facts and procedural history, as gleaned from the certified record, are as follows.

On June 20, 2012, Appellees entered into a home improvement contract with co-defendant, Master Force Construction Corp. ("Master Force")[1] for the replacement of Appellees' roof (the "Contract"). The Contract initially provided for the installation of a metal shingle roof, seamless gutters, gutter covers, and a solar roof energy blanket. The Contract price was $46,250.[2] Master Force subsequently determined that a metal shingle roof was not appropriate for the slope of Appellees' roof, and on July 7, 2012, the parties amended the Contract to reflect installation of a standing seam metal roof instead of a metal shingle roof. This modification resulted in a reduction of the contract price. The Contract contained a one-year labor warranty, and a 35-year manufacturer warranty. The Contract did not disclose that Master Force would subcontract the roof installation to a subcontractor.[3]

---

[1] Master Force is a Florida corporation with a registered business address in Lewisburg, Pennsylvania. Corinne Klose was the President, Secretary, and sole shareholder of Master Force. Klose had delegated operational control of Master Force to Defendant Robert DeHarder. Michael Bloom, a Master Force sales person, executed the Contract on Master Force's behalf.

[2] Although the Contract price included the installation of seamless gutters and gutter covers, Master Force demanded that Appellees pay an additional $2,000 for them.

[3] The contract contains the general language that Master Force "may, at any time, assign or transfer its rights (partially or in full) and/or duties under this

- 2 -

**The Roof**

Master Force hired Wilton, a subcontractor, to install the roof at Appellees' property in September 2012. Wilton presented himself to Appellees as an employee of Master Force and WDMR. On September 18, 2012, a storm occurred. Wilton had not covered Appellees' roof during the installation of the new roof, leaving Appellees' kitchen uncovered and exposed to the elements. Due to the storm, a substantial leak occurred into Appellees' kitchen. Appellees paid an unrelated repairperson, Willard Letterman, $481 to repair the damage caused by the leak. Wilton completed the roofing project in September 2012.

Subsequently, on January 11, 2013, and January 23, 2013, after completion of the new metal roof by Wilton, additional leaks occurred at Appellees' property. After the leaks in 2013, Appellees contacted Robert DeHarder ("DeHarder"), Master Force's operations agent to inform him of the problems with the roof. DeHarder informed Appellees that any leaks were Wilton's responsibility to repair, and not Master Force's responsibility, because Wilton was the installer.

Appellees arranged for Wilton to appear at Appellees' property to discuss the leaks and other issues. Wilton did not, however, appear at Appellees' property at the arranged date and time. Instead, Wilton informed Appellees

---

Contract." Contract, 6/20/12, at 2 (unpaginated). It also contemplates that "[a]ny independent subcontractor utilized will adhere to the terms of this agreement and shall be jointly responsible, with [Master Force], to provide the minimum 1 year warranty as required by the state." *Id.*

by voicemail that he had appeared at an earlier time, claimed that he had caulked a leak around the ridge vent area of the roof, and indicated that the caulking would resolve the leak.

Another roof leak occurred on January 30, 2014. After this leak, Appellees decided to stop dealing with Master Force or Wilton. Appellees contacted Scott Holdren of Marcon Roofing ("Marcon") who, in April 2014 replaced the ridge vent on the roof. According to Marcon, the roof panels Wilton installed were not recommended for installation on low-slope roofs like the one on Appellees' home.[4] Marcon also informed Appellees that Wilton had not properly installed the ridge vent and that the faulty installation had contributed to the leaks. Appellees paid Marcon $2,782 for the repair work he performed.[5]

**The Lawsuit**

On June 19, 2014, Appellees commenced this action by filing a *Praecipe* for Writ of Summons. Relevantly, on March 4, 2016, Appellees filed a Second Amended Complaint against Wilton, Master Force, DeHarder, WDMR, and a related DeHarder-controlled entity known as Fox Home Improvement Network Corp. ("Fox"). In their Second Amended Complaint, Appellees alleged that all defendants had violated the HICPA and the UTPCPL. Appellees also asserted

---

[4] Appellee's roof has a slope of less than three inches per foot.

[5] Another roof leak occurred on January 21, 2018, subsequent to the commencement of this action. Following that leak, Appellees paid C&D Waterproofing $67,020 to replace the entire roof.

claims of Breach of Express Warranty and Negligence against all defendants and claims of Breach of Contract, Breach of Implied Warranty of Merchantability, and Breach of Implied Warranty of Fitness for a Particular Purpose against Master Force, WDMR, Fox, and DeHarder.

On April 14, 2016, Wilton filed an Answer with New Matter to Appellees' Second Amended Complaint. In his New Matter, Wilton asserted that he performed all of the work at Appellees' residence pursuant to an agreement with one or more of the other defendants. New Matter, 4/14/16, at ¶ 118. He also denied liability for Appellees' damages, and raised a claim for contribution or indemnification against his co-defendants. *Id.* at ¶ 127.

**Discovery Sanctions**

On February 28, 2017, Appellees filed a Motion for Sanctions against DeHarder, WDMR, and Fox arising from those defendants' failure to comply with Appellees' discovery requests. On March 20, 2017, Wilton filed a Motion for Sanctions against the same defendants. Following a hearing, on June 9, 2017, the trial court granted Appellees' Motion and, as a sanction, entered a Default Judgment against those defendants.[6] The court also granted Wilton's Motion for Sanctions, entering judgment in his favor against DeHarder, WDMR, and Fox, and ordering them to indemnify Wilton. On June 26, 2017, the court ordered the sanctioned defendants to pay Appellees $24,046.16 in attorney's fees and costs.

---

[6] The court ordered that it would determine the share of each defaulting defendant's liability at trial.

**Summary Judgment Motions**

On July 31, 2017, Wilton filed a Motion for Summary Judgment against Appellees. That same day, Appellees and Master Force filed Motions for Partial Summary Judgment against each other.

On September 13, 2017, the trial court denied Wilton's Motion for Summary Judgment. It also denied Master Force's Motion for Partial Summary Judgment in part, and granted it in part, entering Judgment in Master Force's favor on Appellees' Breach of Implied Warranty of Merchantability claim, and denied Appellees' Motion for Partial Summary Judgment.

**The Trial**

The trial court held a bench trial on the remaining claims against Wilton and Master Force on October 15, 2018 and October 16, 2018. At trial Appellees, Wilton, and Master Force each presented the testimony of an expert witness. Appellees testified on their own behalf and offered the testimony of Jeff Raymond,[7] Corrine Klose, and Scott Holdren.[8]

Although Wilton had notice of the trial, he did not personally appear. Therefore, Appellees introduced as evidence Wilton's September 29, 2016 deposition testimony at trial without objection. Relevantly, Wilton testified

---

[7] Jeff Raymond is a contractor. In 2018, prior to installation of Appellees' new roof by C & D Waterproofing, Raymond's firm, H.W. Raymond Company, removed the metal roof from Appellees' home, and installed the new plywood roof decking and an ice and water shield at a cost to Appellees of $19,043.05.

[8] Scott Holdren inspected the ridge vent Master Force installed at Appellees' home.

that he had installed "somewhere between 100 and 500" roofs for Master Force and DeHarder—"approximately 50 to 75 roofs a year"—before working on Appellees' roof. Wilton Deposition, 9/29/16, at 30. He testified that before beginning Appellees' installation project, he left them a voicemail introducing himself as "Keith from We Do Metal Roofs." *Id.* at 51. He testified that he was "not supposed to tell people" that Master Force had subcontracted him and that he was not a Master Force employee because it was "just not good for business." *Id.* at 104. He testified that, although he did not have any specific independent recollection for this particular project, DeHarder had told him not to tell customers that he was an independent contractor. *Id.* at 104-05, 113-14.

Appellees' expert, Mark Sobeck, testified that he was a consultant on Appellees' 2018 roof replacement by C & D Waterproofing.[9] N.T. 10/15/18, at 12. Sobeck testified that, due to the slope of Appellees' roof, which is "well under three inches per foot," the standing seam metal roof Appellees' purchased from Master Force was the wrong roof system for their home.[10] *Id.* at 13-14. Sobeck also testified that, even if the roof had been appropriate for Appellees' roof, Wilton had installed it improperly. *Id.*

_____

[9] Sobeck charged Appellees $5,000 in consulting fees.

[10] Sobeck explained that, according to code, a standing seam metal roof is not permitted on a slope of less than three inches per foot, and that according to the manufacturer's manual, it is not permitted on roofs whose slope is less than four inches per foot. N.T., 10/15/18, at 13-14.

Jeff Raymond testified that, when he removed the Master Force roof from Appellees' home in 2018, he observed "considerable" water damage as well as "staining, rotting . . . mold, mildew, mushrooms" on the plywood decking of Appellees' roof. N.T., 10/15/18, at 145-46. He also testified that neither Master Force nor Wilton installed a solar roof blanket despite Appellees' having paid for one. *Id.* at 141-42.

Corinne Klose testified that she was the sole owner and shareholder of Master Force, a home improvement business, as well as its president and secretary, but she never intended to do any of its physical or operational work. *Id.* at 231, 233, 247-48. She testified that she did not have a business plan or employees, and did not hire any subcontractors. *Id.* at 232-33. She testified that, in July 2009, Klose appointed DeHarder as Master Force's registered agent, and she expected him to, and he did, in fact, handle "everything." *Id.* at 232-33, 249. DeHarder controlled all of Master Force's operational work and finances, but Klose testified that she was always in contact with him and had authorized everything he did on Master Force's behalf. *Id.* at 239-48

**The Verdict**

On February 15, 2019, the court entered a verdict in favor of Appellees against Wilton and Master Force. Relevantly, the court concluded that Wilton, Master Force, WDMR, Fox, and DeHarder had "acted in concert and conspired to deceive and defraud Appellees by intentional actions and inactions which included the purposeful manipulation of the many [d]efendants to obscure

who was the actual party to the contract, the actual party doing the work[,] and the actual party responsible for any warranty." Trial Ct. Op., 2/15/19, at ¶ 31.

In particular, with respect to Appellees' HICPA claim, the court concluded that: (1) Wilton, Master Force, WDMR, and Fox were "contractors" as defined by HICPA; (2) WDMR, Fox, and DeHarder failed to register as contractors as HICPA requires; (3) Wilton, as instructed by DeHarder purposefully concealed his role as a subcontractor and allowed Appellees to believe Master Force employed him; (4) Master Force accepted work that it had no intention of performing and intended to subcontract to Wilton; (5) the contract between the parties included the placement of gutters and gutter covers, but DeHarder charged Appellees an additional $2,000 to install them; and (6) Master Force abandoned its duty under the contract warranty by not acting when Appellees contacted DeHarder about leaks who then instructed them to contact Wilton.

Relying on 73 P.S. § 517.10, the trial court concluded that Master Force's and Wilton's HICPA violations necessarily resulted in a violation of the UTPCPL.[11] Moreover, the court noted that it found Appellees' expert Sobeck credible and found that the roof sold by Master Force and installed by Wilton was inappropriate, violated manufacturer's recommendations, violated the requirements of the building code in effect, and resulted in damages to

_____

[11] Section 517.10 provides that "[a] violation of any of the provisions of [HICPA] shall be deemed a violation of the [UTPCPL]." 73 P.S. § 517.10.

Appellees. Therefore, the court concluded that Master Force's sale and construction of the roof violated the UTPCPL by "making improvements inferior to the standard agreed to in writing, and representing goods or services that had characteristics or benefits which the goods or services did not have." Trial Ct. Op. at 11 (citing 73 P.S. §201-2(4)). The court also concluded that Master Force failed to comply with the contract warranty and engaged in deceptive conduct that caused confusion or misunderstanding, and that Wilton performed inferior work and withheld from Appellees his role as a subcontractor. *Id.* at 11-12.

The trial court also entered a verdict in favor of Appellees on their Breach of Contract, Breach of Express Warranty, Breach of Implied Warrant of Fitness, and Negligence claims and denied each of the defendants' outstanding cross-claims.

## Damages

The court calculated that Appellees suffered actual damages of $74,216.05,[12] which it trebled as authorized by both the HICPA and the

_____

[12] The court itemized Appellees' actual damages as follows:

    A. 2012 Installation Leak Repairs (Willard Letterman) Four Hundred Eighty-one and 00/100 ($481.00) Dollars;

    B. Gutters (Double Payment) - Two Thousand and 00/100 (2,000.00) Dollars;

    C. Ridge Vent Replacement (Marcon) - Two Thousand Seven Hundred Eighty-two and 00/100 ($2,782.00) Dollars;

UTPCPL.[13]  The court also awarded Appellees attorney's fees and costs of $195,159.20.  On June 24, 2019, the court entered judgment on its verdict after denying post-trial motions.

**Appeal**

This timely appeal followed.[14]  Wilton complied with the trial court's Order to file a Pa.R.A.P. 1925(b) Statement.

**Issues**

Wilton raises the following issues on appeal:

1. Where the trial court accepted as credible the opinions of [Appellees'] expert witness who expressed his opinion that [Appellees] sustained no damage due to negligence of Wilton other than the $481.00 cost to repair damage caused by water infiltration during construction, should [the] verdict against

_____

   D. Roof Consultant- Assess Repair/Replacement needs and Design Replacement Roof (Sobeck Consulting) – Five Thousand and 00/100 ($5,000.00) Dollars;

   E. Roof Demolition and Replacement Sheathing (H.W.Raymond) – Nineteen Thousand Four Hundred Eighty-three and 05/100 ($19,483.05) Dollars;

   F. Replacement Roof (C&D) -  Forty-two Thousand Four Hundred Fifty and 00/100 ($42,450.00) Dollars [];

   G. Replacement Wood Blocking required due to wear and damage (C&D) – Two Thousand Twenty and 00/100 ($2,020.00) Dollars.

Trial Ct. Op. at 13-14.

[13] The court, therefore, awarded Appellees' $222,648.15 in damages.

[14] Master Force filed an appeal from the June 24, 2019 entry of Judgment at No. 1080 MDA 2019.

Wilton be limited to $481.00 for which the negligence of Wilton was a factual cause?

2. Where [the] evidence was not sufficient to prove that Wilton was a "contractor" as defined by HICPA, and where any alleged Wilton violation of HICPA did not cause any damages, should [a] verdict have been entered for Wilton on the UTCPL claim?

3. Should [a] verdict be entered in favor of Wilton on counts of the Second Amended Complaint in which Wilton was not a named defendant?

4. Should [a] verdict be entered for Wilton on damage claims [that] were not proven by competent evidence to have been legally caused by Wilton?

5. Should the request for an award of attorneys' fees, treble damages[,] and expenses against Wilton as a penalty for negligence [that] caused damages of $481.00 for which Wilton repeatedly offered to compensate [Appellees] be denied?

6. Where the cause of the need to replace the roof was the sale by Master Force to [Appellees] of a type of roof system [that] could not function acceptably on [Appellees'] home, and where only one of the eleven averments upon which the UTPCPL claim is based pertains to Wilton, should [a] verdict be entered in favor of Wilton on his claim for indemnification from Master Force?

Wilton's Brief at 7-10.

## Standard of Review

This appeal arises from a verdict following a non-jury trial. We review an order following a bench trial with the following principles in mind:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of law. The findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record. Furthermore, our standard of

- 12 -

review demands that we consider the evidence in a light most favorable to the verdict winner.

***Levitt v. Patrick***, 976 A.2d 581, 588-89 (Pa. Super. 2009) (citation and quotation omitted).

With respect to the weight the trial court gives to the evidence, we note as follows:

[a]ppellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Gold v. Rosen***, 135 A.3d 1039, 1041-1042 (Pa.Super. 2016) (citation omitted). Further, the court "is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." ***Haan v. Wells***, 103 A.3d 60, 70 (Pa. Super. 2014) (citation omitted).

**<u>Issue 1</u>**

In his first issue, Wilton claims that the trial court erred in awarding Appellees' damages against him in excess of $481—the cost of the repairs related to water infiltration from the storm that occurred while Wilton was installing Appellees' roof. Wilton's Brief at 20. He argues that Appellees' other damages arose from occurrences caused by Master Force, namely Master Force's selling Appellees a type of roof system that, owing to its design and

manufacture, was "incapable of performing acceptably regardless of how well it was installed by Wilton." *Id.* at 20-32. He asserts that because the evidence demonstrated that Appellees' harm would have occurred even in the absence of any negligence on Wilton's part in installing the roof, Wilton's conduct was not a factual cause of Appellees' damages. *Id.* at 25-32. Wilton alleges that Appellees' expert's testimony that, among other things, "the roof was inappropriate, wasn't going to work regardless of what Mr. Wilton did" supports his claim. *Id.* at 25. In arguing this issue, Wilton ignores the trial court's conclusion that he acted in concert with the other defendants.

As noted above, the trial court here made an explicit finding that Wilton and his co-defendants "engaged in actions together to deceive and defraud" Appellees. Trial Ct. Op., 6/10/19, at 4. The court flatly rejected Wilton's claim that he was simply "an installer and therefore only liable for the damage that resulted in the several leaks into the residence." *Id.* at 5. Instead, it concluded that Wilton "actively participated in the fraudulent conduct in concert with other [d]efendants in this matter[.]" *Id.* Thus, the court concluded that Wilton was liable not only for the $481 damages that he concedes he caused, but also for the damages caused by his co-defendants.

In light of the trial court's ultimate determination that Wilton and the other defendants acted in concert, Wilton's "factual cause" of only $481 is irrelevant. Appellant's first issue, therefore, warrants no relief.

**Issue 2**

In his second issue, Wilton challenges the court's finding that Appellees proved that Wilton was a "contractor" as defined by HICPA. He also contends that the court erred in concluding that Wilton violated HICPA because Wilton's conduct was not a "factual cause" of Appellees' damages.[15] Wilton's Brief at 33-38. Wilton also challenges the trial court's award to Appellees of treble damages and attorneys' fees and baldly claims that the court erred in finding that "Wilton acted in concert and to further a conspiracy to deceive and defraud, as no conspiracy claim was pled or proven." *Id.* at 38.

Wilton has failed to develop these arguments with citation to any relevant authority, in contravention of Pa.R.A.P. 2119(a) (requiring that the argument section of an appellate brief include discussion and citation of pertinent authority). Accordingly, we find this issue waived. *See*, *e.g.*, *In re Estate of Whitley*, 50 A.3d 203, 209-10 (Pa. Super. 2012) (explaining that the failure to cite relevant legal authority constitutes waiver of the claim on appeal).

---

[15] The HICPA defines a "contractor" as "[a]ny person who owns and operates a home improvement business or who undertakes, offers to undertake[,] or agrees to perform any home improvement . . . includ[ing] a subcontractor or independent contractor who has contracted with a home improvement retailer[.]" 73 P.S. § 517.2. The statute excludes from the definition of "contractor" "[a] person for whom the total cash value of all of that person's home improvements is less than $5,000 during the previous taxable year." *Id.*

**Issue 3**

In his third issue, Wilton claims that the trial court erred in entering a verdict against him on Appellees' Breach of Contract and Breach of Implied Warranty of Fitness for a Particular Purpose claims because Appellees asserted those claims only against the other named defendants.[16]  Wilton's Brief at 38-45.  This issue merits no relief.

The trial court noted it its February 15, 2019 Order and Opinion, and corresponding docket entry that it entered a verdict "in [favor] of [Appellees] and against all defendants" on both Appellees' statutory and common law claims.  Docket Entry, 2/15/19.  The trial court's Opinion then indicates that it calculated Appellees' monetary damages exclusively within the statutory framework of the HICPA and the UTPCPL.  The trial court did not assess any monetary damages against any defendant—including Wilton—for conduct specifically relating to Appellees' common law claims.  Accordingly, because

---

[16] To the extent that Wilton also claims that the trial court erred in entering a verdict against him on Appellees' Negligence claim because "the gist of the action is in contract," and on their Breach of Express Warranty claim because Appellees failed to support it with competent evidence, we find these arguments waived.  ***See***, ***e.g.***, ***Graziani v. Randolph***, 856 A.2d 1212, 1216 (Pa. Super. 2004) (where appellant's argument section contained "nine discrete sections that corresponded in no clear way to the three questions presented," the Court addressed only those aspects of the argument that clearly pertained to each question as stated).  Our review of Wilton's Statement of Questions Involved indicates that he did not "fairly suggest" his "gist of the action" or insufficient evidence claims therein.  ***See*** Pa.R.A.P. 2116(a) (stating, *inter alia*, "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby").

the judgment in favor of Appellees for damages arose solely from violations of the HICPA and UTPCPL, Wilton's claim has no merit.

**Issue 4**

In his fourth issue, Wilton avers that trial court should not have awarded compensation to Appellees for the $5,000 they paid to Sobeck to design a replacement roof system because: (1) Wilton's acts or omissions did not necessitate that expenditure; and (2) because Appellees did not itemize this expense in their Second Amended Complaint. Wilton's Brief at 47. Wilton also challenges certain of the trial court's findings of fact pertaining to Appellees' repair and replacement expenditures and the court's imposition on him of those amounts as damages. *Id.* at 47-53.

Notably, again Wilton has not challenged the court's finding of fact that the defendants acted in concert to defraud Appellees. Thus, to the extent that the trial court's verdict against him reflects damages caused by his co-defendants, Wilton is not entitled to relief. Insofar as Wilton's various claims challenge the trial court's assessment of the amount of damages suffered by Appellees, we find that Wilton has challenged the weight of the evidence.

When considering challenges to the weight of the evidence, we note that, "[i]t is well-settled in Pennsylvania that the weight of the evidence and the credibility of witnesses are issues for the [fact-finder] who is free to believe some, all, or none of the evidence presented." *Odato v. Fullen*, 848 A.2d 964, 966 (Pa. Super. 2004).

"A [fact-finder] is entitled to believe all, part or none of the evidence presented. . . . A [fact-finder] can believe any part of a witness' testimony that they choose, and may disregard any portion of the testimony that they disbelieve." **Martin v. Evans**, 711 A.2d 458, 463 (Pa. 1998) (citation and quotation omitted).

Where a fact-finder has made credibility determinations regarding the testimony and evidence presented, those determinations are rarely overturned. **Armbruster v. Horowitz**, 744 A.2d 285, 287 (Pa. Super. 1999). Further, in order to prevail on a challenge to the weight of the evidence, the verdict must be so "contrary to the evidence as to shock one's sense of justice[.]" **Lanning v. West**, 803 A.2d 753, 765 (Pa. Super. 2002) (quotation and citation omitted)

Instantly, the trial court noted that it "accept[ed] as credible the findings and opinions of [Appellees'] Expert Sobeck and reject[ed] the findings and opinions of Defendant Master Force's Expert Green and Defendant Wilton's Expert Queen." Trial Ct. Op., 2/15/19, at ¶ 29. Wilton essentially asks us to reweigh the evidence and the trial court's credibility determinations. This we cannot and will not do. Moreover, this Court's sense of justice is not shocked by verdict against Wilton. Accordingly, Wilton is not entitled to relief on this claim.

**Issue 5**

In his fifth issue, Wilton avers that the trial court erred in entering a verdict against him that included attorneys' fees and treble damages because

his actions or inactions were the factual cause of only $481 in damages and because Appellees failed to prove that he was a "contractor" as defined by HICPA. Wilton's Brief at 56-57. Wilton also claims that the award of $222,648.15 in damages and $195,159.20 in attorneys' fees resulted in a windfall to Appellees. *Id.* at 58-60. Last, Wilton argues that the court abused its discretion in "punish[ing]" him for the conduct of the other parties. *Id.* at 61-62.

Wilton premises the first part of this averment on his erroneous assertion that the record only supported an award against him of $481. As noted above, the trial court disagreed and concluded that Wilton, having acted in concert with the other defendants, was liable for the full value of Appellees' damages. Therefore, this claim of error fails.

### **Treble Damages**

In reviewing Wilton's claim that the trial court erred in awarding treble damages and in calculating the amount of attorney's fees to which Appellees are entitled, we are guided by the following precepts.

Under the UTPCPL, "[t]he court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees." 73 Pa.C.S.A. § 201-9.2(a).

In **Schwartz v. Rockey**, 932 A.2d 885, 898 (Pa. 2007), the Court concluded that "as a matter of statutory construction, [] the court's discretion to treble damages under the UTPCPL should not be closely constrained by the common-law requirements associated with the award of punitive damages." **Id.** at 898. "[C]ourts of original jurisdiction should focus on the presence of intentional or reckless, wrongful conduct, as to which an award of treble damages would be consistent with, and in furtherance of, the remedial purposes of the UTPCPL." **Id.** "We examine such claims for an abuse of discretion." **Krishnan v. Cutler Group, Inc.**, 171 A.3d 856, 871 (Pa. Super. 2017).

The trial court explained its decision to award treble damages as follows:

Defendants in this case have demonstrated a disregard of requirements of [the] Consumer Protection Statutes and have intentionally conspired to deceive [Appellees]. Defendant Master Force and Defendant Wilton's allegation that Defendant Master Force and Defendant Wilton did not act with Defendant De[H]arder, Defendant We Do Metal Roofs[,] and Defendant Fox Home Improvement is rejected by this [c]ourt as the facts indicate that all Defendants acted in concert. Defendant Master Force, Defendant We Do Metal Roofs[,] and Defendant Fox Home Improvement were certainly involved at the initial contact with [Appellees] to the extent that [Appellees] really did not know with [whom Appellees] had contracted. Defendant De[H]arder was involved in operating Defendant Master Force, Defendant We Do Metal Roofs[,] and Defendant Fox Home Improvement and was an agent of all three (3).

Defendant Wilton purposefully did not disclose Defendant Wilton's part in these matters to [Appellees]. Defendant Wilton actively participated in a scheme that indicated to [Appellees] that Defendant Wilton was an employee and not a subcontractor of Defendant Master Force, Defendant We Do Metal Roofs and/or Defendant Fox Home Improvement. Defendant Wilton [ ]

acknowledged that Defendant Wilton was told not to disclose that Defendant Wilton was a subcontractor, when Defendant Wilton was a subcontractor. This alone is a violation of the HICPA.

These activities caused confusion as to who [Appellees] were to contact if any problem occurred which obviously happened and caused the predictable difficulty sought by Defendants to hamper [Appellees'] attempt to hold some entity accountable for Defendants' failure to perform what was promised and contracted to [Appellees].

Trial Ct. Op., 2/15/19, at 16-17 (paragraph breaks added).

In light of these findings, which the record supports, the court concluded that "[w]ith all [of] the deceit, trickery, chicanery[,] and underhandedness that Defendants utilized in this home improvement project[,] treble damages are warranted[.]" *Id.* at 17. Following our review, we conclude that the trial court properly exercised its discretion in awarding treble damages in Appellees' favor.

### Attorney's Fees

With respect to attorney's fees, under the UTPCPL, "[t]he court may award to the plaintiff, in addition to other relief provided . . . costs and reasonable attorney fees." 73 P.S. § 201-9.2. The trial court has discretion in awarding attorney's fees, and an appellate court will not disturb such an award unless the trial court abuses that discretion. *Skurnowicz v. Lucci*, 798 A.2d 788, 796 (Pa. Super. 2002) (*superseded by statute on other grounds*).

In exercising its discretion, the trial court must consider:

(1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the case; (2) [t]he customary charges of the members of the bar for

similar services; (3) [t]he amount involved in the controversy and the benefits resulting to the client or clients from the services, and (4) [t]he contingency or certainty of the compensation.

***Neal v. Bavarian Motors, Inc.***, 882 A.2d 1022, 1030-31 (Pa. Super. 2005).

The trial court must link the fee award to the amount of damages the plaintiff sustained under the UTPCPL, and eliminate from the award of attorney fees the efforts of counsel to recover on non-UTPCPL theories. ***Id.*** at 1031-32. Accordingly, the court should make an effort to "apportion the time spent by counsel on the distinct causes of action." ***Croft v. P & W Foreign Car Services***, 557 A.2d 18, 20 (Pa. Super. 1989). We have, however, recognized, that "where the plaintiffs are proceeding on multiple theories of relief, including under the UTPCPL, it is difficult to parse out the time between the UTPCPL claim and other causes of action." ***Boehm v. Riversource Life Ins. Co.***, 117 A.3d 308, 335 (Pa. Super. 2015). ***See also Krishnan*** 171 A.3d at 872 (where this Court affirmed the trial court's decision not to "discount" the fee award because the time spent by counsel in litigating the case would be "difficult to divide given the common underlying facts").

In explaining its decision to award attorney's fees as permitted under to the HICPA and the UTPCPL, and the amount of fees awarded, the court noted that, because Appellees proceeded on multiple theories of relief, it "is extremely difficult to delineate the time spent between the claims that [Appellees were] pursuing[.]" Trial Ct. Op., 6/10/19, at 6. Accordingly, the court determined that it would "not reduce the attorney's fees or divide up the attorney's fees among the various theories of recovery that [Appellees] had

- 22 -

set forth and pursued." *Id.* With respect to the Wilton's claim that the award constituted a "windfall" to Appellees' counsel, the court noted that Appellees have already paid all attorney's fees and costs incurred in the litigation. *Id.* at 7. As such, the fees awarded will not go to Appellees' counsel; rather it will reimburse Appellees for the money they spent in litigating this action. Thus, this is not a "windfall" to counsel.

In establishing the amount of the attorney's fee award, the court considered the factors set forth in *Neal*, *supra* at 1030-31. The court noted that it was "satisfied from the testimony and exhibits received and reviewed that the time and labor invested by [Appellees'] counsel was required, given the novelty and difficulty of the questions involved, along with the skill required to properly bring this matter to resolution." Trial Ct. Op., at 8. The court found that Appellees' counsel's charges were appropriate and customary. *Id.* The court found that the fees awarded were proportional to the amount in controversy and the benefit Appellees received due to counsel's efforts. *Id.* Last, the court noted that counsel did not represent Appellees on a contingency basis and awarded only the fees and expenses for which counsel had prepared invoices, and which Appellees had paid. *Id.* In light of the foregoing, we conclude that the trial court properly exercised its discretion in awarding Appellees attorney's fees.

**Issue 6**

In his last issue, Wilton claims that the trial court erred in denying his claim for indemnification or contribution from Master Force for all damages

except the $481 attributable to the water infiltration during construction. Wilton's Brief at 63-64. Wilton argues that Master Force breached its duty to him, implied in his oral subcontract with Master Force, to provide a roof system that was suitable for installation at Appellees' residence. *Id.* at 64. Alternatively, Wilton argues that the court erred because only one of Appellees' eleven allegations of defendant misconduct under the HICPA and the UTPCPL in the Second Amended Complaint arose from Wilton's negligent conduct. *Id.* at 65.

With respect to Wilton's first assertion, this Court's review of the record indicates that Wilton failed to introduce any evidence at trial regarding the alleged indemnification terms and conditions of the oral subcontract between him and Master Force. Thus, the trial court did not err in denying Wilton's claim for indemnification or contribution. Appellant is, therefore, not entitled to relief on this claim.

Wilton's alternate argument likewise fails. Here, Wilton has again neglected to challenge, let alone acknowledge, the trial court's finding that he acted in concert with his co-defendants, which resulted in the assessment against Wilton of the total amount of Appellees' damages. Because Wilton has not challenged that finding, let alone proved the court erred, he is not entitled to relief.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/21/2020