J-A03035-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOHN P. BRANDT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MASTER FORCE CONSTRUCTION | : | |
| CORP. (D/B/A WE DO METAL | : | |
| ROOFS.COM) | : | No. 1080 MDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the Judgment Entered June 24, 2019
In the Court of Common Pleas of Clinton County Civil Division at No(s):
2014-659

BEFORE:  LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 21, 2020**

Appellant, Master Force Construction Corp.,[1] appeals from the June 24, 2019 Judgment entered in favor of Appellees, John P. Brandt, D.O. and Karen Brandt, following a non-jury trial.  Master Force challenges, *inter alia*, the trial court's finding that it violated the Home Improvement Consumer Protection Act ("HICPA"), 73 P.S. §§ 517.1 *et seq.*, and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 *et seq*.  After careful review, we affirm.

---

[1] D/b/a We Do Metal Roofs.com ("WDMR").

**Background**

The relevant facts and procedural history, as gleaned from the certified record, are as follows. On June 20, 2012, Appellees entered into a home improvement contract with Master Force Construction Corp. ("Master Force") for the replacement of Appellees' roof (the "Contract").[2] The Contract initially provided for the installation of a metal shingle roof, seamless gutters, gutter covers, and a solar roof energy blanket. The Contract price was $46,250. Master Force subsequently determined that a metal shingle roof was not appropriate for the slope of Appellees' roof, and, on July 7, 2012, the parties amended the Contract to reflect installation of a standing seam metal roof instead of a metal shingle roof. This modification resulted in a reduction of the Contract price. The Contract contained a one-year labor warranty, and a 35-year manufacturer warranty. The Contract did not disclose that Master Force would subcontract the roof installation to a subcontractor.[3]

---

[2] Master Force is a Florida corporation with a registered business address in Lewisburg, Pennsylvania. Corinne Klose was the President, Secretary, and sole shareholder of Master Force. Klose had delegated operational control of Master Force to Defendant Robert DeHarder. Michael Bloom, a Master Force sales person, executed the Contract on Master Force's behalf.

[3] The Contract contains the general language that Master Force "may, at any time, assign or transfer its rights (partially or in full) and/or duties under this Contract." Contract, 6/20/12, at 2 (unpaginated). It also contemplates that "[a]ny independent subcontractor utilized will adhere to the terms of this agreement and shall be jointly responsible, with [Master Force], to provide the minimum 1 year warranty as required by the state." *Id.*

**The Roof**

Master Force hired Keith R. Wilton ("Wilton"), a subcontractor, to install the roof at Appellees' property in September 2012. Wilton presented himself to Appellees as an employee of Master Force and We Do Metal Roofs ("WDMR"). On September 18, 2012, a storm occurred. Wilton had not covered Appellees' roof during the installation of the new roof, leaving Appellees' kitchen uncovered and exposed to the elements. Due to the storm, a substantial leak occurred into Appellees' kitchen. Appellees paid an unrelated repairperson, Willard Letterman, $481 to repair the damage caused by the leak. Wilton completed the roofing project in September 2012.

Subsequently, on January 11 and January 23, 2013, after completion of the new metal roof by Wilton,[4] additional leaks occurred at Appellees' property. Appellees contacted Robert DeHarder ("DeHarder"), Master Force's operations agent, to inform him of the new leaks and ongoing problems with the roof. DeHarder informed Appellees that any leaks were Wilton's responsibility to repair, and not Master Force's responsibility, because Wilton was the installer.

Appellees arranged for Wilton to appear at Appellees' property to discuss the leaks and other issues. Wilton did not appear at Appellees' property at the arranged date and time. Instead, Wilton informed Appellees by voicemail

---

[4] Although the Contract price included the installation of seamless gutters and gutter covers, Master Force demanded that Appellees pay an additional $2,000 for them.

that he had appeared at an earlier time, claimed that he had caulked a leak around the ridge vent area of the roof, and stated that the caulking would resolve the leak.

Another roof leak occurred on January 30, 2014. After this leak, Appellees decided to no longer deal with Master Force or Wilton. Appellees contacted Scott Holdren of Marcon Roofing ("Marcon") who, in April 2014, replaced the ridge vent on the roof. According to Marcon, the roof panels Wilton installed were not recommended for installation on low-slope roofs like the one on Appellees' home.[5] Marcon also informed Appellees that Wilton had not properly installed the ridge vent and that the faulty installation had contributed to the leaks. Appellees paid Marcon $2,782 for the repair work Marcon performed.[6]

**The Lawsuit**

On June 19, 2014, Appellees commenced this action by filing a *Praecipe* for Writ of Summons. Relevantly, on March 4, 2016, Appellees filed a Second Amended Complaint against Wilton, Master Force, DeHarder, WDMR, and a related DeHarder-controlled entity known as Fox Home Improvement Network Corp. ("Fox"). In their Second Amended Complaint, Appellees alleged that all defendants had violated the HICPA and the UTPCPL. Appellees also asserted

---

[5] Appellee's roof has a slope of less than three inches per foot.

[6] Another roof leak occurred on January 21, 2018, subsequent to the commencement of this action. Following that leak, Appellees paid C&D Waterproofing $67,020 to replace the entire roof.

claims of Breach of Express Warranty and Negligence against all defendants and claims of Breach of Contract, Breach of Implied Warranty of Merchantability, and Breach of Implied Warranty of Fitness for a Particular Purpose against Master Force, WDMR, Fox, and DeHarder.

**Summary Judgment Motions**

On July 31, 2017, Appellees filed a Motion for Partial Summary Judgment against Master Force, and Master Force filed a Motion for Partial Summary Judgment against Appellees.[7]

On September 13, 2017, the trial court denied Master Force's Motion for Partial Summary Judgment in part, and granted it in part, entering Judgment in Master Force's favor on Appellees' Breach of Implied Warranty of Merchantability claim. The court denied Appellees' Motion for Partial Summary Judgment.

**The Trial**

The trial court held a bench trial on the remaining claims on October 15, 2018, and October 16, 2018.[8] At trial, Appellees, Wilton, and Master Force each presented the testimony of an expert witness. Appellees also testified

---

[7] Wilton filed a Motion for Summary Judgment against Appellees, which the trial court denied.

[8] On June 9, 2018, the trial court had entered a Default Judgment against defendants DeHarder, WDMR, and Fox as a sanction arising from their failure to respond to Appellees' discovery requests. Accordingly, those defendants did not participate at trial.

on their own behalf and offered the testimony of Jeff Raymond,[9] Corrine Klose, and Scott Holdren.[10] Although Wilton had notice of the trial, he did not personally appear. Appellees proffered Wilton's September 29, 2016 deposition testimony at trial without objection.

Appellees' expert, Mark Sobeck, testified that he was a consultant on Appellees' 2018 roof replacement by C & D Waterproofing.[11] N.T. 10/15/18, at 12. Sobeck testified that, due to the slope of Appellees' roof, which is "well under three inches per foot," the standing seam metal roof Appellees' purchased from Master Force was the wrong roof system for their home.[12] *Id.* at 13-14. Sobeck also testified that, even if the roof had been appropriate for Appellees' roof, Wilton had installed it improperly. *Id.*

Jeff Raymond testified that, when he removed the Master Force roof from Appellees' home in 2018, he observed "considerable" water damage as well as "staining, rotting . . . mold, mildew, mushrooms" on the plywood

_____

[9] Jeff Raymond is a contractor. In 2018, prior to the installation of Appellees' new roof by C & D Waterproofing, Raymond's firm, H.W. Raymond Company, removed the metal roof from Appellees' home, and installed the new plywood roof decking and an ice and water shield at a cost to Appellees of $19,483.05.

[10] Scott Holdren inspected the ridge vent Master Force installed at Appellees' home.

[11] Sobeck charged Appellees $5,000 in consulting fees.

[12] Sobeck explained that, according to code, a standing seam metal roof is not permitted on a slope of less than three inches per foot, and that according to the manufacturer's manual, it is not permitted on roofs whose slope is less than four inches per foot. N.T., 10/15/18, at 13-14.

decking of Appellees' roof. N.T., 10/15/18, at 145-46. He also testified that neither Master Force nor Wilton had installed a solar roof blanket, despite Appellees' having paid for one. *Id.* at 141-42.

Corinne Klose testified that she was the sole owner and shareholder of Master Force, a home improvement business, as well as its president and secretary, but she never intended to do any of its physical or operational work. *Id.* at 231, 233, 247-48. She testified that she did not have a business plan or employees, and did not hire any subcontractors. *Id.* at 232-33. She testified that she appointed DeHarder as Master Force's registered agent in July 2009, and that she expected him to, and he did, in fact, handle "everything." *Id.* at 232-33, 249. DeHarder controlled all of Master Force's operational work and finances, but Klose testified that she was always in contact with him and had authorized everything he did on Master Force's behalf. *Id.* at 239-48

**The Verdict**

On February 15, 2019, the court entered a verdict in favor of Appellees against Master Force and Wilton. It concluded that, at all relevant times, Corinne Klose had delegated operational control of Master Force to DeHarder. Trial Ct. Op., 2/15/19, at ¶ 10. It further concluded that Master Force, WDMR, Fox, DeHarder, and Wilton "acted in concert and conspired to deceive and defraud Appellees by intentional actions and inactions which included the purposeful manipulation of the many [d]efendants to obscure who was the

actual party to the contract, the actual party doing the work[,] and the actual party responsible for any warranty." *Id.* at ¶ 31.

In particular, with respect to Appellees' HICPA claim, the court concluded that: (1) Master Force, WDMR, and Fox were "contractors" as defined by HICPA; (2) WDMR, Fox, and DeHarder failed to register as contractors as the HICPA requires; (3) Wilton, as instructed by DeHarder, purposefully concealed his role as a subcontractor; (4) Master Force accepted work that it had no intention of performing and intended to subcontract to Wilton; (5) the contract between the parties included the placement of gutters and gutter covers, but DeHarder charged Appellees an additional $2,000 to install them; and (6) Master Force abandoned its duty under the Contract warranty by not acting when Appellees contacted DeHarder about leaks who instead instructed them to contact Wilton.

Relying on 73 P.S. § 517.10, the court concluded that Master Force's and Wilton's HICPA violations necessarily resulted in a violation of the UTPCPL.[13]  Moreover, the court noted that it found that Appellees' expert Sobeck was credible and that the roof sold by Master Force and installed by Wilton was inappropriate, violated manufacturer's recommendations, violated the requirements of the building code in effect, and resulted in damages to Appellees.  Therefore, the court concluded that Master Force's sale and construction of the roof violated the UTPCPL by "making improvements inferior

---

[13] Section 517.10 provides that "[a] violation of any of the provisions of [HICPA] shall be deemed a violation of the [UTPCPL]."  73 P.S. § 517.10.

to the standard agreed to in writing, and representing goods or services that had characteristics or benefits which the goods or services did not have." Trial Ct. Op. at 11 (citing 73 P.S. §201-2(4)). The court also concluded that Master Force failed to comply with the contract warranty and engaged in deceptive conduct that caused confusion or misunderstanding, and that Wilton performed inferior work and withheld from Appellees his role as a subcontractor. *Id.* at 11-12.

The trial court also entered a verdict in favor of Appellees on their Breach of Contract, Breach of Express Warranty, Breach of Implied Warrant of Fitness, and Negligence claims and denied each of the defendants' outstanding cross-claims.

**Damages**

The court calculated that Appellees suffered actual damages of $74,216.05,[14] which it trebled as authorized by both the HICPA and the

---

[14] The court itemized Appellees' actual damages as follows:

    A. 2012 Installation Leak Repairs (Willard Letterman) Four Hundred Eighty-one and 00/100 ($481.00) Dollars;

    B. Gutters (Double Payment) - Two Thousand and 00/100 (2,000.00) Dollars;

    C. Ridge Vent Replacement (Marcon) - Two Thousand Seven Hundred Eighty-two and 00/100 ($2,782.00) Dollars;

    D. Roof Consultant- Assess Repair/Replacement needs and Design Replacement Roof (Sobeck Consulting) – Five Thousand and 00/100 ($5,000.00) Dollars;

UTPCPL.[15]   The court also awarded Appellees attorney's fees and costs of $195,159.20.   On June 24, 2019, the court entered judgment on its verdict after denying post-trial motions.

**Appeal**

This timely appeal followed.[16]   Master Force complied with the trial court's Order to file a Pa.R.A.P. 1925(b) Statement.[17]

**Issues**

Master Force raises the following issues on appeal:

1. Were [Appellees] entitled to a verdict in their favor and against [Master Force] for violation of 73 P.S. § 517.9(8)(iii)?

2. Were [Appellees] entitled to a verdict in their favor and against Master Force for violation of 73 P.S. § 517.9(8)(ii)?

_____

    E. Roof Demolition and Replacement Sheathing (H.W.Raymond) – Nineteen Thousand Four Hundred Eighty-three and 05/100 ($19,483.05) Dollars;

    F. Replacement Roof (C&D) -  Forty-two Thousand Four Hundred Fifty and 00/100 ($42,450.00) Dollars [];

    G. Replacement Wood Blocking required due to wear and damage (C&D) – Two Thousand Twenty and 00/100 ($2,020.00) Dollars.

Trial Ct. Op. at 13-14.

[15] The court, therefore, awarded Appellees a total of $222,648.15 in damages.

[16] Wilton filed an appeal from the June 24, 2019 entry of Judgment No. 1081 MDA 2019.

[17] The trial court did not file a Rule 1925(a) Opinion.  Instead, it relied on its February 15, 2019 Opinion and Order and its June 10, 2019 Opinion and Order-Post Verdict Motions of Defendant Master Force and Defendant Wilton.

3. Were [Appellees] entitled to a verdict in their favor and against Master Force for violation of 73 P.S. § 517.7(a)(10)?

4. Were [Appellees] entitled to a verdict in their favor and against Master Force for violation of 73 P.S. § 517.9(5)?

5. Were [Appellees] entitled to a verdict in their favor and against Master Force for violation of 73 P.S. § 201-2(4)?

6. Were [Appellees] entitled to a verdict in their favor and against Master Force on their Breach of Contract claim?

7. Were [Appellees] entitled to a verdict in their favor and against Master Force on their Breach of Express Warranty claim?

8. Were [Appellees] entitled to a verdict in their favor and against Master Force on their Breach of Implied Warranty of Fitness for a Particular Purpose claim?

9. Were [Appellees] entitled to a verdict in their favor and against Master Force on their Negligence claim?

10. Did the amount awarded by the trial court properly reflect actual damages sustained by [Appellees]?

11. Was the trial court's award of treble damages proper?

12. Was the trial court's award of attorney's fees in the amount of $195,159.20 proper?

13. Was the trial court's denial of Master Force'[s] Crossclaims against the other defendants proper?

Master Force's Brief at 6-8.

**Standard of Review**

This appeal arises from a verdict in favor of Appellees following a non-jury trial. We review an order following a bench trial with the following principles in mind:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of law. The findings of the trial judge in a non-jury case must be given the same weight and effect on appeal

- 11 -

as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record. Furthermore, our standard of review demands that we consider the evidence in a light most favorable to the verdict winner.

*Levitt v. Patrick*, 976 A.2d 581, 588-89 (Pa. Super. 2009) (citation omitted).

With respect to the weight the trial court gives to the evidence, we note as follows:

appellate review of a weight claim is a review of the trial court's exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Gold v. Rosen*, 135 A.3d 1039, 1041-1042 (Pa. Super. 2016) (citation and brackets omitted). Further, the court "is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Haan v. Wells*, 103 A.3d 60, 70 (Pa. Super. 2014) (citation omitted).

Additionally, this case implicates the interpretation of two statutes, the HICPA and the UTPCPL. Statutory interpretation is a question of law, therefore our standard of review is *de novo*, and our scope of review is plenary. *Brown v. Levy*, 73 A.3d 514, 517 (Pa. 2013).

**HICPA Claims**

Master Force's first four issues challenge the trial court's conclusion that Master Force violated certain provisions of the HICPA.

## Issue 1—Pleadings Deemed Amended to Conform to Proof

Master Force first claims that the court erred in finding that Master Force violated 73 P.S. § 517.9(8)(iii)[18] because (1) Appellees did not plead this violation in their Second Amended Complaint, and (2) by the time of trial the statute of limitations on this claim had run. Master Force's Brief at 33-37. Notably, Master Force does not challenge the substance of the court's finding that Master Force violated Section 517.9(8)(iii).

"Pennsylvania is a fact-pleading state; a complaint must not only give the defendant notice of what the plaintiff's claim is and the grounds upon which it rests, but the complaint must also formulate the issues by summarizing those facts essential to support the claim." ***Feingold v. Hendrzak***, 15 A.3d 937, 942 (Pa. Super. 2011) (citations omitted). Pa.R.C.P. 1033(a) provides, with leave of court or the consent of an adverse party, for the amendment of pleadings at any time to include previously unalleged facts, new theories of liability, or to conform the pleadings to evidence admitted at trial. Pa.R.C.P. 1033(a). Unless a request to amend would prejudice an adverse party, the trial court should liberally grant a party permission to

---

[18] 73 P.S. § 517.9(8)(iii) prohibits a home improvement contractor from advertising or offering to perform a home improvement if he does not intend to "charge for the home improvement at the price advertised or offered." 73 P.S. § 517.9(8)(iii). The trial court found that Master Force had violated this provision by demanding Appellees pay an additional $2,000 over the Contract price for the installation of gutters that the parties had included in the Contract.

amend. ***Kuwait & Gulf Link Transport Company v. Doe***, 216 A.3d 1074, 1093 (Pa. Super. 2019), *appeal denied*, 2020 WL 829886 (Pa. 2020) (Table).

Where the statute of limitations has run, however, a party may not amend its complaint to introduce a new cause of action. ***Junk v. East End Fire Dept.***, 396 A.2d 1269, 1277 (Pa. Super. 1978). However, if an amendment does not introduce a new cause of action, but "would only amplify or enlarge [an] existing cause of action, it will be permitted[,]" even where the statute of limitations has run. ***Sanchez v. City of Philadelphia***, 448 A.2d 588, 589 (Pa. Super. 1982).

Most significant to the instant case, where a party introduces evidence, without objection from an adverse party, a court may "treat the pleadings as amended to conform to the proof." ***Boyal Pioneer Paper Box Mfg. Co. v. Louis De Jonge & Co.***, 115 A.2d 837, 839 (Pa. Super. 1955) (explaining that where the plaintiff introduced evidence of an implied warranty in its action for breach of an express oral warranty, and the defendant did not object, the court properly submitted a breach of implied warranty claim to the jury because it was "in keeping with the evidence introduced at the trial without objection.").

A HICPA violation constitutes a violation under the UTPCPL. 73 P.S. § 517.10. "A UTPCPL claim is subject to the 6-year statute of limitations[.]" ***Morse v. Fisher Asset Management, LLC***, 206 A.3d 521, 526 (Pa. Super. 2019) (citing 42 Pa.C.S § 5527(6)).

This Court's review of Appellees' Second Amended Complaint indicates that Appellees pleaded a HICPA claim,[19] but that they did not specifically plead that Master Force had charged them an additional $2,000 for the installation of gutters and gutter covers, or that this resulted in Master Force's violation of 73 P.S. § 517.9(8)(iii). However, the Contract includes a provision for the installation of seamless gutters and gutter covers, and Master Force does not dispute the existence of that Contract provision and that it charged Appellees an additional $2,000 for that service outside of the Contract price.

In addition, the record evidence, admitted without objection from Master Force, shows that Appellees fully expected that the Contract price agreed upon would cover the gutter installation and that Master Force nonetheless required Appellees to pay an additional $2,000 to have the gutters installed. Brandt Deposition, 10/6/16 at 68; N.T., 10/15/18, at 163, 168, 173.

In light of the foregoing, we conclude that the trial court did not abuse its discretion or err as a matter of law in treating Appellees' HICPA-based pleadings as amended to conform to the uncontradicted evidence that Master Force charged Appellees an additional $2,000 to perform a service included in

---

[19] Appellees alleged that the defendants had violated the HICPA by, *inter alia*: (1) failing to disclose the name and other pertinent information of any subcontractor that would be working on the job; (2) making false statements to induce Appellees to enter into the Contract; and (3) directly or indirectly publishing false or deceptive advertisements. **See** Second Amended Complaint at ¶ 46.

the parties' June 20, 2012 contract, in violation of 73 P.S. § 517.9(8)(iii). Because the evidence upon which this amendment is based did not change the operative facts underlying Appellees' claims, we do not agree with Master Force that this amendment introduced a new cause of action. Instead, this "amendment" amplified Appellees' HICPA claim in the Second Amended Complaint, with the support of the language of the parties' Contract, and the testimonial evidence of Appellee John Brant, given first on October 6, 2016 (within the applicable 6-year statute of limitations) without objection. Accordingly, Master Force is not entitled to relief on this claim.

### **Issue 2—73 P.S. § 517.9(8)(ii) – Offering and Advertising to Perform Work it Has No Intention of Performing**

Next, Master Force claims that the court erred in finding that Master Force accepted work that it did not intend to perform and, thus, violated 73 P.S. § 517.9(8)(ii).[20, 21] Master Force's Brief at 37-38. In particular, the trial court found that "Master Force accepted work [that] Master Force had no intention of performing and intended to subcontract with Wilton, but did not

---

[20] The HICPA prohibits a contractor from advertising or offering to perform any home improvement work if the contractor does not actually intend to perform the work. 73 P.S. § 517.9(8)(ii).

[21] Master Force first alleges that Appellees' did not plead this theory of liability in their Second Amended Complaint or anywhere else, and the statute of limitations on this claim has run. We disagree. Our review indicates that in their Second Amended Complaint Appellees pleaded this claim when they averred that Master Force violated the HICPA by failing to disclose that "the work would be completed by a subcontractor as required by the [HICPA]." Second Amended Complaint at ¶¶ 21, 76(a).

disclose that Wilton was a subcontractor which is required to be included as part of the written contract." Trial Ct. Op., at 10.

Master Force argues that the record does not support the trial court's finding that Master Force entered into the Contract with no intention of performing it because Master Force did, in fact, complete the work through its subcontractor, Wilton. *Id.* at 38-39. As proof that it intended to perform the Contract through its subcontractor, Master Force highlighted the general provision in the Contract that "contemplated that some or all of the work related to the [r]oof [i]nstallation would be performed by a subcontractor."[22] *Id.* at 39.

Appellees argue, to the contrary, that the evidence that Master Force did not have any employees and that it had subcontracted hundreds of jobs to Wilton and other subcontractors was sufficient to prove that Master Force could not have intended to perform the home improvement outlined in the Contract. Appellees' Brief at 31.

It is well-established that "[w]hen reviewing the sufficiency of the evidence . . . this Court must determine whether the evidence and all reasonable inferences therefrom, viewed in the light most favorable to the verdict winner, was sufficient to enable the factfinder to find against the losing

---

[22] As noted *supra*, the Contract contains the general language that Master Force "may, at any time, assign or transfer its rights (partially or in full) and/or duties under this Contract." It also contemplates that "[a]ny independent subcontractor utilized will adhere to the terms of this agreement and shall be jointly responsible, with [Master Force], to provide the minimum 1 year warranty as required by the state." Contract, 6/20/12, at 2 (unpaginated).

party." *Zeffiro v. Gillen*, 788 A.2d 1009, 1013 (Pa. Super. 2001) (citation omitted).

In this case, Appellees presented evidence that Master Force had no employees and that its founder, Corinne Klose, did not intend to personally perform any of the contracted work. N.T., 10/15/18 at 232-33. Wilton testified at his deposition that he had installed "somewhere between 100 and 500" roofs for Master Force and DeHarder—"approximately 50 to 75 roofs a year"—before working on Appellees' roof. Wilton Deposition, 9/29/16, at 30. He further testified that he was not the only subcontractor hired by DeHarder to install roofs. *Id.* at 103. Wilton also testified that at the time Master Force and Appellees amended the Contract on July 7, 2012, he "would not have known that he was the installer for the roof." *Id.* Master Force did not present any evidence refuting the testimony of Klose or Wilton that would indicate that it or a subcontractor intended to perform the work outlined in the Contract.

In light of the evidence that Master Force had no employees to install roofs and always used subcontractors, the trial court reasonably inferred that at the time Master Force entered into the Contract, Master Force did not intend that it would be the entity installing Appellees' roof. Our analysis, however, does not end there. Also significant to the analysis is the absence of evidence to support Master Force's position that at the time it entered into the Contract it intended to use a subcontractor to perform the work. Master Force never advised Appellees that it would not perform the work itself, and would instead use a subcontractor to perform the work. From these facts, the trial court

properly concluded that, at the time it entered into the Contract, Master Force did not intend to perform the work itself or to hire a subcontractor to do the work.

We reject Master Force's argument that because it had the **right** under the Contract to hire a subcontractor that it **intended** to do so. More importantly, we find persuasive the trial court's conclusion that, since Master Force failed to advise Appellees that it intended to hire a subcontractor, Master Force did not intend to do so.

In conclusion, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to Appellees as verdict-winners, as we must, we conclude that the evidence supports the trial court's findings. The court did not err in determining that Master Force did not intend to perform the Contract. Accordingly, Master Force's claim fails.[23]

**Issue 3 – Failure to Identify Wilton as a Subcontractor**

Third, Master Force claims that the trial court erred as a matter of law when it interpreted 73 P.S. § 517.7(a)(1) as requiring Master Force to identify

---

[23] Master Force also asserts that the UTPCPL required Appellees' to prove that they would have cancelled the Contact if they had known that Master Force engaged Wilton as a subcontractor. Master Force's Brief at 41-42. It cites no relevant case law in support of this assertion as required by Pa.R.A.P. 2119. Accordingly, it has waived this argument. *See*, *e.g.*, *In re Estate of Whitley*, 50 A.3d 203, 209-10 (Pa. Super. 2012) (explaining that the failure to cite relevant legal authority constitutes waiver of the claim on appeal).

Wilton as its subcontractor at the time it entered into the Contract.[24]  Master Force's Brief at 41.  Master Force argues that Appellees did not present any evidence that Master Force knew that Wilton would be working for it as a subcontractor at the time the parties entered into the Contract.

The HICPA states, in relevant part, that a home improvement contract is enforceable only if, *inter alia*, it "includes the names, addresses[,] and telephone numbers of all subcontractors on the project known at the date of signing the contract."  73 P.S. §517.7(a)(1).

We agree with Master Force that Appellees did not present any evidence that Master Force knew on June 20, 2012, when it signed the Contract, that Wilton would be the subcontractor who installed Appellees' roof.  In fact, the only evidence on this issue came from Wilton who testified at his deposition that even as late as July 7, 2012, he was unaware of Appellees' job and that he was not the only subcontractor that DeHarder hired to install roofs.  Wilton Deposition, 9/29/16 at 103.

We conclude, therefore, that even viewing the evidence in the light most favorable to Appellees, the evidence does not support the trial court's conclusion that Master Force knew on June 20, 2012, that it would subcontract

---

[24] The trial court concluded that Master Force "intended to subcontract with [] Wilton, but did not disclose that [] Wilton was a subcontractor[,] which is required to be included as part on the written contract."  Trial Ct. Op. at 10.

Appellees' job to Wilton. Thus, the trial court erred as a matter of law in finding that Master Force violated 73 P.S. § 517.7(a)(1).[25]

**Issue 4 – Abandoning Duty Under the Warranty**

In its fourth issue, Master Force claims that the trial court erred in finding that it violated the HICPA when it "abandoned its duty under the contract warranty by simply doing nothing for [Appellees] when [Appellees] contacted [DeHarder,]" in violation of 73 P.S. § 517.9(5). *Id.* at 44.

The HICPA prohibits a contractor from "abandon[ing] or fail[ing] to perform, without justification, any home improvement project engaged in or undertaken by" him. 73 P.S. § 517.9(5).

Master Force claims that the Contract provided that either it or Wilton could perform its labor warranty.[26] Master Force's Brief at 45. It argues, therefore, that it complied with its obligations under the warranty when Appellees made their 2012 claim by instructing Appellees to contact Wilton, who, in turn, inspected the roof and performed repairs. *Id.* Master Force notes that Appellees did not make any further claims under the labor warranty during its one-year effective period and never made any manufacturer warranty claims. *Id.* Master Force concludes that the evidence reflects that

---

[25] In light of this disposition, we do not address Master Force's argument that noncompliance with Section 517.7(a)(1) merely voids the contract and does not give rise to a private cause of action under the HICPA.

[26] The Contract provides that "[a]ny independent subcontractor utilized will adhere to the terms of this agreement and shall be jointly responsible, with the Contractor, to provide the minimum 1 year warranty as required by the state." Contract, 6/20/12, at 2 (unpaginated).

it did not abandon its duty to Appellees under the warranty. *Id.* at 45-46. We agree.

The evidence demonstrates that: (1) upon learning that Appellees' roof was leaking, Master Force instructed Appellees to contact Wilton to address their issues; (2) Appellees contacted Wilton; (3) Wilton undertook remedial measures; and (4) Appellees did not again contact Master Force. Accordingly, rather than prove that Master Force abandoned Appellees, the evidence shows that Master Force responded to Appellees singular request for service under the warranty. Because Appellees chose not inform Master Force that the remedial measures undertaken by Wilton were unsatisfactory, Master Force had no way of knowing that Appellees' roof required additional repairs. Simply, Appellees did not give Master Force an opportunity to offer them additional service under the warranty.

We conclude, therefore, that the trial court erred in finding that Master Force abandoned its duty under the Contract warranty in violation of the HICPA.

**Conclusion**

In sum, following our consideration of Appellant's HICPA-based claims of error, we affirm the trial court's verdict in favor of Appellees on their claims that Appellant charged Appellees $2,000 to perform a service included in the Contract and offered or advertised to perform work it had no intention of performing pursuant to 73 P.S. §§ 517.9(8)(iii) and 517.9(8)(ii), respectively. We reverse the trial court's verdict in favor of Appellees on their claims that

Appellant failed to identify Wilton as a subcontractor at the time the parties entered into the Contract and abandoned its duty to Appellees under the Contract warranty pursuant to 73 P.S. §§ 517.7(a)(1) and 517.9(5), respectively.

**UTCPL Claim**

**Issue 5**

In its fifth issue, Master Force claims that the trial court erred when it found that Master Force violated Section 201-2(4) of the UTPCPL, asserting that the credible evidence does not support the court's findings. Master Force's Brief at 46-51.

The UTPCPL provides a private right of action for anyone who "suffers any ascertainable loss of money or property" as a result of "an unlawful method, act or practice." 73 P.S. § 201-9.2. Section 201-2(4) lists twenty enumerated practices which constitute actionable "unfair methods of competition" or "unfair or deceptive acts or practices," including a catch-all provision proscribing "fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4).[27]

---

[27] Here, the trial court found that Master Force had violated Sections 201-2(4)(v), (xiv), (xvi), and (xxi). These subsections prohibit: (1) "representing that the goods or services have . . . characteristics . . . benefits or qualities they do not have;" (2)"[f]ailing to comply with the terms of any written . . . warranty;" (3) making improvements "of a nature or quality inferior to or below the standard of that agreed to in writing;" and (4) "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(v); (xiv); (xvi); (xxi).

Additionally, we point out that:

> The UTPCPL is Pennsylvania's consumer protection law and seeks to prevent unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. The purpose of the UTPCPL is to protect the public from unfair or deceptive business practices. Our Supreme Court has stated courts should liberally construe the UTPCPL in order to effect the legislative goal of consumer protection. The UTPCPL provides a private right of action for anyone who suffers any ascertainable loss of money or property as a result of an unlawful method, act or practice.

*Fazio v. Guardian Life Ins. Co. of America*, 62 A.3d 396, 405 (Pa. Super. 2012) (quotation omitted). "To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004).

Relying on Sobeck's credible testimony, the trial court found that "the roof utilized at [Appellees'] residence was inappropriate, violated manufacturer's recommendations, violated the provisions of the [b]uilding [c]ode in effect, and resulted in damages to [Appellees.]" Trial Ct. Op. at 11. *See also id.* at 8 (where the court relied on Sobeck's testimony that "the roof was improperly installed and should never have been installed on this building due to the slope of the roof"). Based on the credible evidence, the court concluded that "Master Force's sale and construction of [Appellees'] roof violated the UTPCPL by making improvements inferior to the standard agreed to in writing, and representing goods and services that had characteristics or

benefits which the goods and services did not have." *Id.* The court further concluded that Master Force "failed to comply with the warranty and engaged in deceptive conduct that caused confusion or misunderstanding." *Id.* In so finding, the trial court credited the testimony of Appellees' expert Sobeck and expressly did not credit the testimony of Master Force's and Wilton's experts. *Id.*

It is unclear from our review of Master Force's Brief whether Master Force has intended to raise a challenge to the weight the trial court gave to the parties' evidence or to the sufficiency of Appellees' evidence in proving the UTPCPL violation, as it has conflated those issues throughout its argument on this issue. Master Force has not provided a clear argument on either a sufficiency or a weight challenge and has failed to provide this Court with a standard of review on either type of challenge in violation of Pa.R.A.P. 2119.

It is improper to conflate weight and sufficiency challenges. *See Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (highlighting the distinctions between the two claims). Moreover, "it is not the duty of this Court to act as an appellant's counsel, and we decline to do so." *C.H.L. v. W.D.L.*, 214 A.3d 1272, 1277 (Pa. Super. 2019) (citation omitted). "We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead we will deem the issue to be waived. *Id.* at 1277-78 (citation omitted). "This Court cannot conduct a meaningful review if it has to guess what issues an appellant is appealing." *Id.* at 1278.

- 25 -

Master Force's conflation of its weight and sufficiency challenge and its failure to provide a clear, developed argument with a standard of review of either claim has hampered our ability to provide meaningful appellate review of this issue. Accordingly, it is waived.

**Common Law Claims**

### Issue 6, 7, and 8

In its sixth, seventh, and eighth issues, Master Force claims that the trial court erred in entering judgment in favor of Appellees on their common law claims of Breach of Contract, Breach of Express Warranty, and Breach of Implied Warranty of Fitness for a Particular Purpose claims. Master Force's Brief at 52-55. In its Brief, Master Force has supported these allegations of error, in significant part, by references to arguments it made in prior sections of its Brief. *Id.*

Our Supreme Court has previously held that such "incorporation by reference" is an unacceptable manner of appellate advocacy for the proper presentation of a claim for relief to the Court. *Commonwealth v. Edmiston*, 634 A.2d 1078, 1092 n.3 (Pa. 1993). *See, e.g., Commonwealth v. Wholaver*, 177 A.3d 136, 160 (Pa. 2018) (finding the appellant's claim undeveloped where he supported them, in significant part, by references to arguments made in other parts of his appellate brief). The Rules of Appellate Procedure specifically require a party to set forth in his or her brief, in relation to the points of his argument or arguments, "discussion and citation of authorities as are deemed pertinent," as well as citations to statutes and

opinions of appellate courts and "the principle for which they are cited." Pa.R.A.P. 2119(a), (b). Therefore, our appellate rules do not allow incorporation by reference of arguments presented in support of other claims in an appellant's brief as a substitute for the proper presentation of discrete argument in the body of the appellate brief. Master Force has, therefore, waived Issues 6, 7, and 8.

**Issue 9**

In its ninth issue, Master Force claims that the trial court erred in entering judgment in favor of Appellees on their Negligence claim. Master Force's Brief at 55-56. In particular, Master Force asserts that the "gist of the action" doctrine bars Appellees' Negligence claim. *Id.* at 55.

Pa.R.A.P. 1925(b)(4) requires, *inter alia*, that an appellant's Rule 1925(b) Statement "concisely identify each error that the appellant intents to assert with sufficient detail to identify the issue to be raised[.]" Pa.R.A.P. 1925(b)(4)(ii). "Issues . . . not raised in accordance with the provision of this paragraph (b)(4) are waived." *Id.* at (b)(4)(vii).

Our review of Master Force's Rule 1925(b) Statement reveals that Master Force failed to raise this issue with sufficient specificity. *See* Rule 1925(b) Statement, 7/18/19, at 9 ("This [h]onorable [c]ourt erred and/or abused its discretion in finding in favor of [Appellees] and against Master Force on [Appellees'] other claims (Count 2- Breach of Contract; Count 3- Breach of Express Warranty; Count 5- Breach of Implied Warranty of Fitness; Count 6- Negligence) for all the reasons set forth above and those set forth in Master

- 27 -

Force's Proposed Findings of Fact and Conclusions of Law."). Because Master Force did not specify that the "gist of the action" doctrine was the basis for its claim of error, it has waived this claim.

**Damages**

### Issue 10 – Actual Damages

In its tenth issue, Master Force claims that the trial court miscalculated Appellees' actual damages. Master Force's Brief at 56-58. In particular, Master Force avers that the court included in Appellees' damages cash they paid to Jeff Raymond for work that he performed in 2018 that exceeded the scope of the Contract and, thus, were not damages attributable to Master Force's actions or inactions. *Id.* at 57. Master Force complains that the "Raymond invoice," which the trial court admitted as evidence at trial without objection, was not itemized and included the installation of "GAF ice and water barrier" and "repairs to venting." *Id.* According to Master Force, Jeff Raymond did not perform this work "as a result of any of Master Force's actions vis-a-vis the Roof or the Installation."[28] *Id.*

To the extent that Master Force complains that Jeff Raymond's invoice "include[ed] items that were not included in the Contract" and was not itemized," we note that Master Force did not place any objection to admission of the invoice at the time of trial. Likewise, Master Force did not object at trial

---

[28] To the extent Master Force also argues that the trial court erred in awarding Appellees $2,000 in damages to compensate them for the additional cost of gutter installation because Appellees did not plead that claim, as discussed *supra*, we find this issue meritless.

- 28 -

to Appellees' evidence that Jeff Raymond had done work beyond that specified for in the Contract. Accordingly, Master Force waived this argument. ***See Commonwealth v. Tha***, 64 A.3d 704, 713 (Pa. Super. 2013) (noting that "we have long held that failure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal." (citation, internal quotation marks, brackets omitted)).

Further, we disagree with Master Force's assertion that the court's decision to award Appellees the full amount reflected on the Raymond invoice "could only be based on pure conjecture and, therefore, amounted to an abuse of discretion." Master Force's Brief at 57. The trial court credited the testimony and evidence of Appellees and their experts and, in its February 15, 2019 Opinion, it provided an itemized list of the actual damages it attributed to Master Force. Trial Ct. Op. at 12-14. After our review, we conclude that the record supports the court's determination and we will not disturb the trial court's credibility determinations. Master Force is, therefore, not entitled to relief on this claim.

### Issue 11 – Treble Damages

In its eleventh issue, Master Force claims that the trial court abused its discretion when it awarded Appellees treble damages. Master Force's Brief at 58-60. Master Force argues that treble damages were inappropriate because: (1) it did not violate the UTPCPL; and (2) even if it did, Appellees did not present evidence that Master Force's actions were intentional, wrongful, or reckless. ***Id.*** at 58-59.

Pursuant to the UTPCPL, "[t]he court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees." 73 P.S. § 201-9.2(a).

As noted above, a violation of the HICPA constitutes a violation of the UTPCPL. A trial court has considerable discretion to determine whether to award treble damages upon determination that a defendant has violated the UTPCPL. *Johnson v. Hyundai Motor Am.*, 698 A.2d 631, 639-40 (Pa. Super. 1997). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires . . . manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Grady v. Frito–Lay, Inc.,* 839 A.2d 1038, 1046 (Pa. 2003).

> In *Johnson v. Hyundai Motor Am.*, *supra*, our Court stated:

> It is undisputed that the imposition of exemplary or treble damages is essentially punitive in nature. The law of Pennsylvania clearly provides, however, that punitive damages are not recoverable in an action solely based upon breach of contract. *Thorsen v. Iron and Glass Bank*, [] 476 A.2d 928, 932 ([Pa. Super.] 1984). *See Standard Pipeline Coating Co. v. Solomon & Teslovich, Inc.*, [] 496 A.2d 840, 844 ([Pa. Super.] 1985) (holding "punitive damages will not be assessed for mere breach of contractual duties, where no recognized trespass cause of action . . . arose out of the same transaction[.]"). Whereas in contract actions, damages are awarded to compensate an injured party for the loss suffered due to the breach, *Empire Properties,*

> *Inc. v. Equireal Inc.*, [] 674 A.2d 297, 304 ([Pa. Super.] 1996), the purpose of punitive damages is to punish outrageous and egregious conduct done in a reckless disregard of another's rights; it serves a deterrence as well as a punishment function. *Schecter v. Watkins*, [] 577 A.2d 585, 595 ([Pa. Super.] 1990). Therefore, under the law of this Commonwealth, a court may award punitive damages only if an actor's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others. *SHV Coal, Inc. v. Continental Grain Co.*, [] 587 A.2d 702, 704 ([Pa.] 1991); *Rizzo v. Haines*, [] 555 A.2d 58 ([Pa.] 1989). It is precisely these well-grounded principles of law that we expect the trial courts will follow when, as in the instant case, exercising discretion and awarding treble damages for breach of contract/warranty under the UTPCPL.

698 A.2d at 639-40.

We, thus, review an award of treble damages for rationality and "focus on the presence of intentional or reckless, wrongful conduct, as to which an award of treble damages would be consistent with, and in furtherance of, the remedial purposes of the UTPCPL." *Schwartz v. Rockey*, 932 A.2d 885, 898 (Pa. 2007).

The trial court here found, and we have affirmed, that Master Force violated Section 201-2 of the UTPCPL and also violated the UTPCPL by violating the HICPA. Therefore, we consider only whether it abused its discretion in awarding treble damages.

Master Force has not cited any authority in support of its bald claim that the court's award of treble damages represented an abuse of the court's discretion. Instead, Master Force claims that: (1) it could not have acted recklessly or wrongfully because it advised Appellees that the type of roof they initially sought was inappropriate for their home; and (2) the court abused its

discretion in assessing treble damages against Master Force for the "improper litigation actions" of DeHarder, WDMR, and Fox. Master Force's Brief at 59-60. Master Force has not indicated where the record shows that the court's award was the result of manifest unreasonableness, partiality, prejudice, bias, or ill will. **Grady,** 839 A.2d at 1046. Master Force's failure to cite to relevant authority or the record to support its argument fatally impairs this Court's ability to review its claim. **C.H.L.**, 214 A.3d at 1277-78. Accordingly, we find it waived.

### Issue 12 – Attorney's Fees

In its twelfth issue, Master Force claims that the trial court abused its discretion in awarding Appellees $195,159.20 in attorney's fees. **Id.** at 60-63.

Under the UTPCPL, "[t]he court may award to the plaintiff, in addition to other relief provided[,] . . . costs and reasonable attorney fees." 73 P.S. § 201-9.2. The trial court has discretion in awarding attorney's fees, and an appellate court will not disturb such an award unless the trial court abuses that discretion**. Skurnowicz v. Lucci**, 798 A.2d 788, 796 (Pa. Super. 2002) (*superseded on other grounds by statute*).

In exercising its discretion, the trial court must consider:

(1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the case; (2) [t]he customary charges of the members of the bar for similar services; (3) [t]he amount involved in the controversy and the benefits resulting to the client or clients from the services, and (4) [t]he contingency or certainty of the compensation.

*Neal v. Bavarian Motors, Inc.*, 882 A.2d 1022, 1030-31 (Pa. Super. 2005).

In addition, the trial court must link the fee award to the amount of damages the plaintiff sustained under the UTPCPL, and eliminate from the award of attorney fees the efforts of counsel to recover on non-UTPCPL theories. *Id.* at 1031-32. Accordingly, the court should make an effort to "apportion the time spent by counsel on the distinct causes of action." *Croft v. P & W Foreign Car Services*, 557 A.2d 18, 20 (Pa. Super. 1989).

We have, however, recognized that "where the plaintiffs are proceeding on multiple theories of relief, including under the UTPCPL, it is difficult to parse out the time between the UTPCPL claim and other causes of action." *Boehm v. Riversource Life Ins. Co.*, 117 A.3d 308, 335 (Pa. Super. 2015). *See also Krishnan v. Cutler Group, Inc.,* 171 A.3d 856, 872 (Pa. Super. 2017) (where this Court affirmed the trial court's decision not to "discount" the fee award because the time spent by counsel in litigating the case would be "difficult to divide given the common underlying facts").

In explaining its award of attorney's fees as permitted under to the HICPA and the UTPCPL, the court noted that, because Appellees proceeded on multiple theories of relief, it "is extremely difficult to delineate the time spent between the claims that [Appellees were] pursuing[.]" Trial Ct. Op., 6/10/19, at 6. Accordingly, the court determined that it would "not reduce the attorney's fees or divide up the attorney's fees among the various theories of recovery that [Appellees] had set forth and pursued." *Id.*

The court did, however, consider the factors set forth in **_Neal_**, **_supra_**, to establish the amount of attorney's fees.  Trial Ct. Op., 6/10/19, at 5-8. The court noted that it was "satisfied from the testimony and exhibits received and reviewed that the time and labor invested by [Appellees'] counsel was required, given the novelty and difficulty of the questions involved, along with the skill required to properly bring this matter to resolution."  **_Id._** at 8.  The court found that Appellees' counsel's charges were appropriate and customary, and the fees awarded were proportional to the amount in controversy and the benefit Appellees received due to counsel's efforts.  **_Id._**

Last, the court noted that counsel did not represent Appellees on a contingency basis and awarded only the fees and expenses for which counsel had prepared invoices, and which Appellees had paid.  **_Id._**  In light of the foregoing, we conclude that the trial court properly exercised its discretion in awarding Appellees attorney's fees.

### Issue 13 – Denial of Master Force's Cross-Claims

In its final issue, Master Force asserts that the trial court erred in denying Master Force's cross-claims for contribution or indemnity against Wilton, DeHarder, Fox, and WDMR.  Master Force's Brief at 63-64.

Our review of the record indicates that Master Force did not present any evidence at trial in support of its cross-claims.  Nor has Master Force cited in its appellate Brief to any part of the record where it where it established that it met its burden of proof on any of its cross-claims.  Thus, this claim amounts

to nothing more than a vague, unsupported allegation that the trial court "erred." Master Force is, therefore, not entitled to relief.

Judgment affirmed.[29]

Judge Lazarus join the memorandum.

Judge Stabile concurs in result.


Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/21/2020

---

[29] Our reversal of the trial court on two of Appellant's four HICPA-based claims does not alter the trial court's Judgment in Appellees' favor in any respect as we have affirmed on two of Appellant's HICPA-based claims, its UTPCPL claims, and its common law claims.